MURRELL *v.* STUDSTILL, administrator.

1. Ordinarily a promise is not implied to pay reasonable value for service rendered in the care of and attention to a very near relative. Where, however, the parties sustain toward each other the relationship of grand-parent and an adult grandchild, and the circumstances show that the grandparent does not stand in loco parentis as to the child, and the serv-

ices performed by the child are not only in the nature of care and atten-
tion bestowed upon an old and infirm grandparent, but are such as to in-
dicate the relation of master and servant, or employer and employee,
and where the character of service rendered, taken in connection with
other surrounding circumstances, indicates that it was the intention of
both parties that compensation should be made, and negatives the idea
that services were performed merely because of a natural sense of duty or
love and affection arising out of the relation of the parties, a foundation
for a recovery for such services would be established.

2. The evidence in this case, which was a suit by a granddaughter against
the estate of her grandfather for services rendered, was sufficient to au-
thorize the jury to infer an implied contract to compensate the plaintiff
for her services; and the court, therefore, erred in granting a nonsuit.

Submitted April 29, — Decided May 26, 1898.

Complaint.   Before Judge Smith.   Telfair superior court.
October term, 1897.

*D. C. McLennan*, for plaintiff.   *Eason & McRae*, for defendant.

LEWIS, J.   This was an action against the administrator of
the estate of the plaintiff's grandfather, upon a quantum meruit,
for services rendered by her to the intestate in his household
in waiting upon him and his wife, in cooking for them, and
in rendering other services upon the premises.   From the tes-
timony it appeared that the plaintiff, who was then an adult,
left the home of her mother and stepfather, and went to her
grandfather's house, remaining there for nearly three years.
During that time she not only waited upon her grandparents
and performed the ordinary duties of a housekeeper for them,
but also cooked and washed, and at times worked in the field
on the farm, "pulled corn if necessary, and picked cotton."
The testimony further showed that her services were worth
from $10.00 to $20.00 per month.   Plaintiff testified that she
did not live with her grandparents as one of the family, and
the reason she did not was that she was working for a living.
She ate at the table with them, however, and was treated as
one of the family.   Her grandfather bought some of her clothes,
or furnished her the money to buy part of them, and she bought
some herself with her money which she had made by taking
in sewing.   At the time of the death of the intestate, he was
worth about $5,000.   The money furnished by him to the

plaintiff did not amount to more than a few dollars. A number of witnesses testified that the deceased had talked with them about compensating plaintiff for her services, stating that he intended to pay her for what she had done for him; that he was satisfied that none of his children would have waited on him without pay, nor any of the rest of his grandchildren, and that he was going to pay her for her trouble; that she had been good to wait on him during his sickness, and attend to everything about the place; and that he intended to give her a good living out of what he had for her services during the time she stayed with him. It appeared further that plaintiff went to the home of her grandfather at his instance, one of the witnesses testifying that the plaintiff was "employed" to stay with her grandfather. At the conclusion of plaintiff's evidence, the court, upon motion of counsel for the defendant, granted a nonsuit. To this the plaintiff excepted.

The plaintiff in this case failed to show any express contract between herself and her grandfather, by virtue of which she was entitled to any compensation for her services. It is, therefore, contended by the defendant in error, that on account of the near relationship existing between the two, the law will presume that her services were rendered gratuitously, and from love and affection. The principle decided in the case of *Hudson* v. *Hudson*, 90 *Ga.* 581, is embodied in section 4936 of the Civil Code: "Ordinarily, when one renders services or transfers property valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof, but this presumption does not usually arise in cases between very near relatives." But this court has never decided that on account of relationship, however near, there can be no recovery for services rendered by one relative to another without proof of an express contract. If the services are of such a nature as to raise the presumption that they were rendered solely on account of affection growing out of near relationship, the law will not imply a contract, but, in the absence of proof of an express contract, will presume that no compensation was either expected or contemplated by the parties. If, for instance, a son should bestow care and attention upon an old and infirm father, should

wait upon him during his illness and administer to his physical wants and necessities, this would be nothing more than the discharge of a natural duty owing by a child to a parent; and without an express contract, the child could not recover for such attention given to the parent.    But each case involving this class of actions must be determined by its own circumstances. One circumstance for the jury to consider is the relationship of the parties; another that should be considered and have great weight in determining the liability of the defendant is the nature and character of the services rendered.    Suppose, for instance, an adult child should be engaged as a clerk or bookkeeper in the store of his father, or should work upon his farm as a common laborer, or should otherwise be engaged in a business that would tend to enhance the value of the father's estate; could it be contended that he could not recover for such services from the estate of his deceased father without proving an express contract with him?

In Schouler's Domestic Relations, § 274, where he treats of claims against the parental estate, it is declared:    "In meritorious instances, and particularly where the parent was long sick and infirm, and the child, or some particular child, performed indispensable functions, or where by personal labor and skill the child enhanced the value of the parental estate, a mutual intention to this effect may be inferred from the circumstances; and where, from some consistent cause, no such testamentary provision has been made, compensation will be allowed out of the deceased parent's estate upon the usual footing of a creditor's claim."    In the case of Broderick v. Broderick, 28 W. Va. 385-6, the rule is laid down as follows:    "As between parents and an adult child whenever compensation is claimed in any case by either against the other for services rendered, it must be determined from the particular circumstances of that case whether the claim should be allowed or not.    There can be no fixed rule governing all cases alike.    In the absence of direct proof of any express contract, the question always is, can it be reasonably inferred that pecuniary compensation was in view of the parties at the time when the services were rendered; and that depends upon the circumstances of the case, the rela-

tion of the parties being one of the circumstances." In the case of Morton v. Rainey, 82 Ill. 215, it appeared that a minor of eleven years of age was taken into the family of his uncle, and remained there until of age, receiving support from the uncle, and after becoming of age, continued to reside with his uncle, but furnished his own clothes, and paid his own medical bills. It was held that these facts were sufficient to establish an implied contract on the part of the uncle to pay him what his services were reasonably worth.

The services rendered by the plaintiff in error in this case were not only such as a grandchild would naturally render from love and affection in waiting upon an infirm, old grandparent, but she also performed the services of a common servant in cooking, washing, and doing labor in the field. By such services she saved the grandparent expenses that he would otherwise have had to incur in the employment of labor, and thus enhanced the value of his estate. While there was no express contract proved, yet there was enough in this case to submit it to the jury, and to leave it to this tribunal to determine, in the language of this court in the case of *Hudson* v. *Hudson*, above cited, whether or not the surrounding circumstances revealed by the evidence "plainly indicate that it was the intention of both parties that compensation should be made, and negative the idea that the services were performed merely because of that natural sense of duty, love and affection arising out of this relation" of grandparent and grandchild. We therefore think the court erred in granting a nonsuit, and the judgment is accordingly *Reversed. All the Justices concurring.*