## MENDEL *v.* MILLER & SONS.

1. If a contract is of a character which, under the statute of frauds, is required to be in writing, and it does not meet the requirement of the statute in that regard, and suit is brought upon it, if the defendant in his answer admits the contract without insisting on the statute of frauds, he will be treated as having renounced the benefit thereof. But if the defendant by his answer admits the agreement but pleads and insists upon the benefit of the statute, he will be entitled to it, notwithstanding such admission.

2. Under the liberal right of amendment in this State and the right to file contradictory pleas, although a defendant may have in his original answer admitted a contract as alleged by the plaintiff, he is not prevented from amending such answer and setting up the statute of frauds, if applicable to the case.

3. If the contract for the sale of corn, as originally made, be treated as sufficient to answer the demand of the statute of frauds, but on cross-examination of a witness the defendant showed that there was a parol agreement between the witness and the defendant that sales by the former to the latter should be under the rules of a municipal board of trade, of which the defendant was not a member, and that in the absence of specification of time for shipment of goods prompt shipment was intended, and then showed by a rule of the board of trade that in case of orders for prompt shipment five days were allowed, this did not present such a case of a written contract specifying that shipment should be made in five days as to authorize the invoking against the plaintiff, upon an offer of parol evidence to show a waiver of time, of the rule that where a contract was required by the statute of frauds to be in writing and was reduced to writing, parol evidence was inadmissible to show a binding executory modification of its terms.

4. The charge in some particulars did not clearly present the defenses raised by the original answer and the amendment thereto; and the case is accordingly returned for a new trial.

5. The letter written by the purchaser to the seller in regard to another transaction was not relevant.

JUNE 18, 1910.

Action for breach of contract. Before Judge Charlton. Chatham superior court. May 29, 1909.

*Osborne & Lawrence,* for plaintiff in error.

*Oliver & Oliver,* contra.

LUMPKIN, J. Miller & Sons brought suit against Jonas Mendel to recover damages for a breach of contract in refusing to receive a car-load of corn purchased by him. They alleged that the corn had been shipped under bill of lading with draft attached, and had been held for some time at the request of Mendel, and on his promise to take up the draft; and that upon his final refusal the corn was sold; and suit was brought for the difference between what it

brought and the contract price, together with certain storage charges. The plaintiffs recovered, and the case was brought to this court, after the refusal of a new trial. The judgment was reversed, because some of the instructions of the charge submitted to the jury issues which were not authorized by the evidence. *Mendel v. Miller,* 126 *Ga.* 834 (56 S. E. 88, 7 L. R. A. (N. S.) 1184). In the original answer the defendant admitted the purchase of the corn and its shipment as alleged by the plaintiff, but denied that the corn shipped was of the kind or quality ordered. When the case was returned to the trial court the defendant amended his answer, by pleading that the subject-matter of the action was the sale of goods, wares, and merchandise to the amount of more than fifty dollars, and therefore within the statute of frauds (Civil Code, § 2693, par. 7), and that no contract in writing was made, nor any memorandum thereof signed by the defendant, or by any one lawfully authorized by him; and also that the corn offered to him was not delivered within the time or in the manner ordered. The plaintiffs again recovered a verdict. Defendant moved for a new trial, and, after it was refused, excepted.

On behalf of the plaintiffs in the court below, the defendants in error here, it was contended that inasmuch as the defendant in the trial court admitted in his original answer the making of the contract alleged by the plaintiffs, he could not afterwards by amendment set up and get the benefit of the statute of frauds. The right to amend pleadings in this State is very broad. Indeed no exception was taken to the allowance of the amendment in this case. Contradictory defenses may be filed. Civil Code, § 5065; *Wade v. Watson,* 129 *Ga.* 614 (59 S. E. 294). If suit is brought upon a parol contract, which under the statute of frauds should be in writing, and the defendant in his answer admits the contract, without insisting on the statute of frauds, the court will consider that the defendant has renounced the benefit of the statute, and proceed accordingly. But if the defendant by his answer admits the parol agreement, and yet pleads the statute and insists upon the benefit of it, he will be entitled to it notwithstanding such admission. *Hollingshead v. McKenzie,* 8 *Ga.* 457; *Douglass v. Bunn,* 110 *Ga.* 165 (35 S. E. 339). This is a different thing from admitting all the facts which create liability, and yet denying the existence of such liability in general terms. When the amendment to the an-

swer was allowed, it stood as if it were originally a part of the
pleading. The defendant did not, by reason of his original admis-
sion, preclude himself from setting up the statute of frauds.

We have experienced some difficulty in dealing with this case,
because the trial proceeded, in part at least, on an erroneous basis.
While the statute of frauds was pleaded and certain rulings in-
voked in regard thereto, it was not contended in this court by coun-
sel for plaintiff in error that the original contract fell within the
statute of frauds. It was stated in the brief: "The original con-
tract of sale was admitted. It was therefore without the statute:
but this contract provided that the corn should be delivered within
the stipulated time. The court permitted plaintiff to introduce
parol evidence to show that this time limit had been waived, and
instructed the jury that if they found that the time limit had been
waived, the defendant would be liable. . . We insist upon the
proposition that where a contract is by the statute of frauds re-
quired to be in writing, and is so made, the parties may not there-
after show a variation or alteration of this contract by parol testi-
mony." The letters introduced in evidence and the statement of
the contract in the plaintiff's petition did not set any definite limit
to the time for delivery. The letter from Browder, the local broker,
to Mendel, which Browder in his evidence called a "sale ticket,"
stated that "I have today sold you to arrive steamer for account
of L. F. Miller & Son, Philadelphia, Pa., one car sacked 2 white
corn at 61 1-2 cents per bu. delivered." This did not name the
date for delivery, and therefore, in the absence of anything else.
would mean that the delivery should be in a reasonable time, con-
sidering the nature of the transaction. Civil Code, § 3724. While
Browder was on the stand as a witness, on cross-examination, he
testified as follows: "There was no time specified for the ship-
ment of that corn. When no time is specified as to shipment, that
means prompt shipment. This corn was sold under the rules of
the Board of Trade, of Savannah. In selling that specified car, I
did not tell Mr. Mendel at that time that it was sold under the rules
of the Board of Trade, but when Mr. Mendel went into the grain
business I told him I would only sell him grain under the rules of
the Board of trade. He said that he was not a member of the Board
of Trade. I said, 'I will sell you grain, but whenever there is a
controversy between you and the shipper as to grade, whatever the

certificate of the inspector of the Savannah Board of Trade calls for, you must abide by it, or I will not sell it to you.' It was sold under the rules of the Board of Trade. He did not buy it except under the understanding had with him at that time." The evidence did not undertake to show any custom of trade so universal as to become a part of the contract. It did not even show a definite agreement on the part of Mendel to be bound by all the rules of the Board of Trade, or to adopt the limitations placed by such board upon the time for delivery. The only thing specified by Browder as having been mentioned to Mendel was, that, in case of controversy as to grade, Mendel should abide by whatever the certificate of the inspector called for. There was no reference in the letters to the rules of the Board of Trade; the defendant did not mention them in his pleadings; and the plaintiff only passingly referred to them by saying that the corn was inspected by the official inspector of the board, and that the defendant paid for the service the inspection fee of 75 cents due under the rules. This evidence practically amounted to tacking on to the writing a parol agreement connecting it with the rule as to time; and a rule of the Board of Trade was introduced to show that, where goods were ordered for prompt shipment, five days were allowed. Thereupon the defendant contended that the written contract, required by the statute of frauds, limited the shipment to five days (or two days if the shipment was to be "immediate"), and that the plaintiffs should not have been allowed to show by parol evidence that, although the car was not shipped within that time, after its arrival Mendel waived that fact and promised from time to time to take up the draft and receive the corn within a few days. We do not deem it necessary to enter into a discussion of the rule that where a contract is required by the statute of frauds to be in writing and is put in writing, executory modifications of it can not be shown by parol, or the question of whether, by a request for a postponement of delivery and an assent thereto, there may be a waiver of strict performance in the nature of a mere voluntary forbearance or of an estoppel, rather than an executory contract, or the extent of it. The defendant, not having stood on the written contract claimed to have been made by the "sale ticket" and to have been acknowledged by the letters, but having sought by parol to add other stipulations thereto, now complains that other parol evidence was admitted on the other

side. The court also charged to the effect that if a contract was made that a thing should be delivered in a certain number of days, and if it arrived shortly after the expiration of the limited time, and the purchaser did not object to the delay, but asked that the goods be kept for his convenience to a later date, he waived the time limit. This charge appears to deal with the rule of the Board of Trade as being part of the written contract and fixing definitely the time within which the delivery should be made.

The presiding judge informed the jury that he did not charge them on the subject of the statute of frauds, because he did not consider that it was involved in the case, although the defendant contended that it was so. He added, "I do not consider, under the evidence in this case, we are concerned with the giving of that law in charge to this jury, as the contract seems to come within the exceptions of the statute of frauds, and not under the statute of frauds." We are not clear to which of the exceptions to the statute of frauds the learned presiding judge had reference. The exceptions stated in the code are, when the contract has been fully executed; and where there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance. Civil Code, § 2694. It is quite clear that the contract had not been fully executed, or there would have been no occasion for the present suit. When the case was previously before this court, a reversal was had partly because the presiding judge submitted to the jury the question of delivery, and explained to them the difference between actual and constructive delivery. We do not see that the evidence on the last trial established a delivery of the corn. Even were there evidence in such a case tending to show such a part performance by one party to a contract as would render it a fraud for the other party to refuse to comply, the court should not generally declare this as a matter of law.

If it should be determined that the plaintiffs were entitled to recover, but questions arise concerning loss by deterioration of the corn and the diligence of the plaintiffs in protecting it and preventing or reducing damages resulting from keeping or delay, they have been discussed in the former decision of this court. There was no error in admitting evidence on that subject. Nor was the criticism on the charge in regard to due care well taken.

The letter from the defendant to the plaintiffs in regard to another car-load of corn, written after the order for this car-load and before its arrival, does not appear to have been relevant. It was contended that certain statements therein as to the price of corn and the time for the delivery of that car threw light on the case. But the evidence did not disclose that the market price was the same when that letter was written as when the car-load of corn in controversy arrived, or that the contracts made in the two cases were similar. If offered to impeach the defendant's evidence, no foundation appears to have been laid for its introduction.

We think the case should be returned for another trial on the defenses set up in the original answer and the amendment thereto. Aside from the question of the statute of frauds, much of the law of the case was discussed in the former decision of it by this court.

*Judgment reversed. All the Justices concur.*