27032. TATUM, administrator, *v.* MOSS.

DECIDED SEPTEMBER 28, 1938.

*C. D. Rivers,* for plaintiff in error.
*S. W. Fariss,* contra.

GUERRY, J. Where an adult child renders services in and about the home of his or her parent, these services being in their nature those usually or which might reasonably be expected to be rendered by such member of the family in the circumstances, the common and most reasonable inference, and therefore the only inference acceptable in law, in the absence of an express showing to the contrary, is that the services are rendered and accepted as a gratuity. Out of the family relationship arise certain obligations and duties, based on love and affection, for which, when performed, the law rightly attaches no contractual obligation to pay. So where an adult child renders services to an aged and infirm parent in the nature of care and attention, and such care and attention in the circumstances constitute services and acts which, from the common experience of mankind, should proceed from the relationship existing between the parties, the strong and conclusive inference is that there is no intent to exact compensation on the one hand, or to pay therefor on the other. See *Hudson* v. *Hudson,* 90 *Ga.* 581 (16 S. E. 349); *O'Kelly* v. *Faulkner,* 92 *Ga.* 521 (17 S. E. 847); *Grubbs* v. *Hamby,* 34 *Ga. App.* 774 (131 S. E. 189); *Greenwood* v. *Greenwood,* 44 *Ga. App.* 847 (163 S. E. 317). These examples

serve to illustrate the nature and scope of the principle stated in the Code, § 3-107, that "this presumption [implied promise to pay for services rendered] does not usually arise in cases between very near relatives." It is most important in cases of this character, as is well illustrated by the numerous decisions on the subject, to keep in mind that it is a question of fact whether there existed an implied contract to pay for the services rendered, which must generally be left to the jury for determination. "It is a question of fact if services are accepted whether a reasonable man in the position of the parties would understand that they are offered in return for a fair compensation, or would rather suppose either that they are offered gratuitously, or if not, that the recipient might think so. It is customary to lay down presumptions, as that 'with respect to strangers a contract for compensation will be implied unless a contrary situation is exhibited,' whereas as between relatives 'a contract alleged to exist must be affirmatively shown.' But it is undesirable to lay too much stress on such presumptions. They are mere inferences of fact." 1 Williston on Contracts, 94, § 36. In every suit seeking recovery of the reasonable value of services rendered to another, it is important to know that the parties were near relatives, just as, says the above learned author, "is the fact that one who requested services did not receive the benefit from them." Id. 96. However, this fact is not conclusive on the issue thus presented in all cases.

The circumstances in which the services had their beginning and in which they were rendered, the position of the parties, may be such as to make the fact of relationship of minor importance and authorize a finding that "a reasonable man in the position of the parties would understand that they are [were] offered in return for a fair compensation," and therefore authorize a finding by the jury of an implied contract to pay therefor. *Murrell* v. *Studstill,* 104 *Ga.* 604 (30 S. E. 750) ; *Hurst* v. *Lane,* 105 *Ga.* 506 (31 S. E. 135) ; *Harrison* v. *Harrison,* 129 *Ga.* 284 (58 S. E. 831) ; *Jackson* v. *Buice,* 132 *Ga.* 51 (63 S. E. 823) ; *Howard* v. *Randolph,* 134 *Ga.* 691 (68 S. E. 586, 29 L. R. A. (N. S.) 294, 20 Ann. Cas. 392) ; *Wall* v. *Wall,* 15 *Ga. App.* 156 (82 S. E. 791) ; *Edwards* v. *Smith,* 42 *Ga. App.* 730 (157 S. E. 348) ; *Dyer* v. *Beasley,* 31 *Ga. App.* 276 (120 S. E. 638). We must not erroneously assume that the case is so simple as to be able to hold that, since

the parties were near relatives, the services rendered were in law gratuitous. It is only in the plainest cases that the court may say that because of the relationship existing between the parties the inference is demanded that the services were gratuitous. In the present case Miss Eugenia Moss brought suit against the administrator of the estate of J. D. Tatum to recover the reasonable value of services rendered by her to the deceased during the last four years of his life. It appears from the evidence that the deceased was an uncle of the plaintiff. He was seventy-three years of age at the time of his death. For many years he and the plaintiff lived together. For the last two years they resided in a house which belonged to the plaintiff. Before that time they lived at the home of the deceased. The plaintiff selected the food, prepared the meals, cleaned the house, and performed all of the other duties necessary in the management and upkeep of the house. The deceased was not wholly inactive or bedridden, but was somewhat feeble and required considerable attention. During this period he was sick several times, including his last illness of several weeks, and the plaintiff alone nursed and cared for him. She mended his clothes and paid another person fifty cents a week of her own money to have them and other household articles washed and ironed. The plaintiff was a woman advanced in age, somewhat feeble herself, and it is inferable that these services were rendered at somewhat of an effort on her part. It also appeared that the deceased furnished the money to buy the food for the house.

The plaintiff sued for $2920, valuing her services at $2 per day for the four years. The jury returned a verdict in her favor for $1100. Whether the jury considered this as the entire value of her services for the four-year period, or whether they found her entitled to compensation only while the deceased lived in her home, or the entire value of her services less the reasonable value of her board, can not be known. It is sufficient to say that we are of the opinion that the verdict was supported by the evidence. Obviously in a case of this character (where there is no actual manifestation of real intent) the law does not seek to ascertain the actual mental intent of the parties. The impracticability of so attempting to judge the rights and liabilities of the parties is, to us, manifest. We believe that what the law actually does is to

consider the conduct of the parties together with all of the pertinent circumstances, and adjudge what, in the normal course of human dealings, would have been the intent or reasonable expectation of the ordinarily reasonable person. The test is objective rather than subjective. In the present case the jury has found in favor of the plaintiff, and in our opinion that should be the end of the matter.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*