27166, 27286.   McDONALD v. ROGERS, and vice versa.

ARGUED MAY 8, 1972 AND JUNE 13, 1972 (CROSS APPEAL)—
DECIDED SEPTEMBER 7, 1972.

*McDonald, McDonald & McDonald, Ernest McDonald,* for appellant.

*Frank M. Gleason,* for appellee.

MOBLEY, Chief Justice. The petition of Marion Rogers against Cecil McDonald, filed on June 22, 1966, alleged in part: On January 1, 1960, the parties entered into a written partnership agreement to operate a hardware store in the City of Ringgold under the partnership name of Ringgold Hardware Company. Rogers bought a one-third interest in the partnership, paying $6,000 in cash and giving his note for $26,079.04. The yearly profits of the business have more than paid his debt to McDonald, but McDonald has failed and refused to give him an accounting. The parties jointly engaged in the operation of the business from the date of the formation of the partnership until February 21, 1966, on which date McDonald wrongfully and illegally took charge of the assets of the partnership and excluded Rogers from the premises under threats of physical violence. Rogers is unable to comply with the terms of the contract requiring him to give his whole time and attention to the business, because McDonald refuses to permit him to do so. He has made constant demands for a settlement of his interest in the partnership, but McDonald refuses to make an accounting with him. McDonald has had complete control and custody of the accounts of the partnership since its formation. Since the date of his exclusion from the partnership premises, McDonald has been guilty of specified acts without Rogers' consent, which are in violation of his rights under the partnership agreement. The books of the partnership are in the hands of a named bookkeeper, and Rogers does not know the financial condition of the business. He is entitled to an accounting as to the true financial condition of the partnership. There is no legal or contractual obligation on the part of either of the parties to make an offer to buy or sell until the respective rights and liabilities of each are determined.

There were prayers for injunction, receivership, an accounting, and other relief.

The written partnership agreement provides that Rogers purchased from McDonald, subject to the terms of a bill of sale from Rogers to McDonald, a one-third interest in the listed assets of the business of "Ringgold Hardware Company," formerly owned by McDonald, for the purchase price of $32,079.04. Article 5 provides that the partnership commenced on January 1, 1960, and would continue until terminated in the manner provided in the contract, unless terminated in the manner provided for in a bill of sale of the same date given by Rogers to McDonald. Article 9 provides certain conduct of the partners (not involved in this case) which would authorize a dissolution of the partnership. Article 13 provides that: "The partnership may be dissolved by mutual consent of the partners at any time upon filing and publishing notice of such dissolution as is required by law, or by the manner provided for in a bill of sale given by the said Marion Rogers to the said Cecil McDonald of even date, or by the manner provided for in Article 9 above, or upon one of the partners becoming insane, or upon the conviction for a felony of one of the partners, or by the extinction of the business for which the partnership is formed, or by such misconduct of either partner as will in equity justify a decree of dissolution, or upon the abandonment of the business of the partnership by one of the partners. Otherwise, if either partner desires to withdraw from the partnership, or desires that the partnership be discontinued, he must first offer to sell his interest therein to the other partner at a price which he shall name or to buy the interest of the other partner at the same price on a pro rata basis according to their respective interests; and if the other partner refuses to either buy or sell on such offer, the proposing partner may then dissolve the partnership at his own instance, after thirty days' notice given to the other partner . . ." Article 7 provides that each partner shall give his whole time and attention to the business of the partnership, for which each shall draw a salary

of $60 per week. Article 8 provides that if, after paying the expenses of the business and the salaries of the parties, any profits remain to be divided, they shall be divided and paid, one-third to Rogers and two-thirds to McDonald. Article 10 provides that complete and accurate and true books of account shall be kept by the partnership, to which each of the partners shall have free access at all times, and account or inventory of the assets of the partnership shall be taken and entered upon the books of the partnership at the end of each calendar year. Article 14 provides that the terms of the agreement are specifically made subordinate to the terms of the bill of sale given by Rogers to McDonald.

On April 20, 1967, Rogers filed an amendment to his petition, alleging that: At a hearing in the case the parties agreed in open court to themselves inventory the assets before any further action was taken in the litigation. An inventory was made by each party, but there was a substantial difference in the values placed on the inventory, and the dispute can only be settled by a jury trial. Rogers desires to terminate the partnership by selling the property at public sale, paying the debts of the partnership, and dividing the remainder of the proceeds between the partners in accordance with the terms of the partnership agreement.

On April 11, 1969, Rogers struck the allegations of his amendment of April 20, 1967, in which he asserted that he wanted the partnership business sold and the partnership terminated, and alleged that he is entitled to have an accounting made and the profits and losses of the business determined by a jury, to have the partnership continued, and to have a determination made of the assets, liabilities, and profits of the business from its commencement until April 12, 1969.

McDonald in his answer alleged that: The rights of the partners were controlled by the partnership contract and the bill of sale given by Rogers to McDonald. No net profits in the sense referred to in these documents have accumulated, been declared, or been drawn out by McDonald, resulting in his receiving no payment of the indebtedness of

$26,070.04, plus interest, owed by Rogers to him. On the occasion of February 21, 1966, he attempted to discuss with Rogers the fact that Rogers had taken unnecessary time to transact business of little value, whereupon Rogers became angry, announced that he had quit devoting his time to the business, and took his keys to the various buildings used in the business off his belt and threw them at McDonald. Rogers then left the premises and has since voluntarily and wilfully refused to participate in its operation, leaving McDonald with no alternative but to continue the business himself. Rogers has never been refused access to the records of the business or the inspection of any of its assets. Rogers has approached McDonald only once with regard to a settlement of the partnership affairs. This was in the latter part of March, 1966. Rogers at that time agreed to consult with the bookkeeper to determine the financial worth of the business so that he might decide what he wanted to do. In June, 1966, McDonald had a letter from Rogers' attorney, advising that the attorney had been employed to collect a one-third interest in the business for Rogers, pointing out the provision of the partnership contract for a withdrawing partner to make an offer to buy or sell to the other partner, and insisting that he should be advised what the assets, liabilities and net profit of the business were. McDonald's attorney replied to this letter, but heard nothing further in the matter until McDonald was served with the present suit. Rogers' wrongful withdrawal from the business on February 21, 1966, and continued refusal to participate in the business, authorizes McDonald to make demand in full on the note given by Rogers to him. The share of profits of Rogers is wholly insufficient to retire this indebtedness, which authorizes McDonald to make demand of Rogers for full payment under terms of the partnership agreement. Such demand is made, and upon failure of Rogers to pay the indebtedness of $38,091.09, McDonald will pursue the remedy provided in the bill of sale, that is, cause an inventory to be made of the assets of the partnership based on current wholesale market value; take charge

of the assets of the business as his own, giving Rogers credit for one-third of the value of the assets, less one-third of the outstanding obligations against the business; or if one-third of the assets shall exceed the amount of indebtedness, deliver the balance thereof to Rogers; and if the net value of one-third of the assets is insufficient to pay the indebtedness, then he will call upon Rogers to pay the balance. In order to show a willingness to do complete equity, McDonald offers to take an inventory of the assets of the business, and to determine the net value of the respective interests of the parties, make these known to Rogers, and then to either buy or sell for cash the business, at the option of Rogers, within a period of 10 days after the values are made known to Rogers.

On May 11, 1967, an amendment was filed to McDonald's answer, which alleged that Rogers had failed to pay the note, or to participate with McDonald in determining the financial status of the partnership business. Extensive schedules were attached, purporting to be the inventory and financial status of the business. The amount shown to be due Rogers was $2,886.82, and this amount, with interest, was tendered into court, on the condition that Rogers convey title to certain real property to McDonald. By subsequent amendments McDonald alleged errors that had been made in the schedules, resulting in different amounts to be due Rogers. The last amendment alleged that $6,663.78 principal and $482.65 interest were due Rogers, and these amounts were tendered into the registry of the court.

On May 10, 1969, the jury returned a special verdict finding that the partnership business terminated on June 29, 1966, and that Rogers is entitled to $30,801.02 from McDonald. The jury's verdict was made the judgment of the court on May 28, 1969.

McDonald appealed from this judgment in Case No. 27166, enumerating 176 alleged errors.

1. Counsel for Rogers has suggested that this court may not have jurisdiction of the case, since the equitable reme-

dies of injunction and receivership have been previously removed from the case.

"A court of equity has jurisdiction in all cases of an accounting and settlement between partners." *Smith v. Hancock,* 163 Ga. 222 (2b) (136 SE 52). This principle was recognized in *Manry v. Hendricks,* 192 Ga. 319 (15 SE2d 434), but this court did not retain jurisdiction in that case since the partnership had been dissolved by written agreement.

The present case involves an accounting between partners and is an equitable action. The jurisdiction of the appeal is therefore in this court.

2. On May 1, 1972, an appeal was filed in this court by Rogers (Case No. 27286) from the judgment sustaining the motion of McDonald to strike the motion of Rogers to dismiss the appeal of McDonald (Case No. 27166).

In this latter appeal McDonald has filed a motion to dismiss the appeal, asserting that the appeal should have been filed as a cross appeal in Case No. 27166, and that the judgment is not one that can be reviewed without a certificate of immediate review.

The contention of Rogers in regard to dismissing the appeal in Case No. 27166 was that McDonald had not complied with the law relating to the filing of the transcript of the evidence and proceedings and transmission of the record to this court.

By Rule 11 (c) of this court, effective March 2, 1972, objections of this nature must be made in the trial court and a ruling obtained prior to the transmittal of the record, or the objection is deemed to be waived. The ruling by the trial judge in this case refusing to dismiss the appeal was dated February 29, 1972, prior to the filing of the appeal in the main case on March 3, 1972, but the record in the appeal on the matter of dismissal was not filed until May 1, 1972, because of the time required to transcribe the lengthy testimony at the hearings on the motion to dismiss.

McDonald filed his notice of appeal in the trial court in Case No. 27166 on June 7, 1969. The time of filing cross

appeal had, of course, expired before the motion to dismiss the appeal was filed. *Code Ann.* § 6-803 (a) (Ga. L. 1965, pp. 18, 21; Ga. L. 1966, pp. 493, 496; Ga. L. 1968, pp. 1072, 1077).

Under the new rule of this court requiring that questions of the nature of the motion to dismiss in this case be presented to the trial court, we think the proper procedure in reviewing the trial judge's refusal to dismiss the appeal in Case No. 27166 would have been by motion to dismiss that case, accompanied by the record in connection with the hearing by the trial judge, in which motion to dismiss the movant could have asserted the reasons why he contends that the trial judge erred in refusing to dismiss the appeal, then pending in the trial court.

A motion to dismiss the appeal in Case No. 27166 has been filed. In view of the fact that no procedure was indicated in regard to review in connection with our Rule 11 (c), and litigants have not been put on notice of the proper method of reviewing a ruling by a trial judge on a motion to dismiss the appeal, we will consider the appeal from the refusal of the trial judge to dismiss the appeal in Case No. 27166 as an amendment of the motion to dismiss already filed in this court.

3. Two main contentions were made by Rogers in seeking to dismiss the appeal. One was that on about October 23, 1970, the court reporter filed the transcript of the evidence with the clerk of the trial court, and the clerk failed to transmit it to this court in the time required by law. The other contention is that the appeal is stale because of. the long delay in filing it in this court.

Voluminous evidence was introduced in the case. There are 6,774 pages of the transcript of the evidence, besides additional exhibits. The trial judge knew personally, and was authorized to find from the evidence that: McDonald paid the court reporter $5,000 in advance to prepare the transcript. Numerous extensions of time were granted on the court reporter's assertions that he had not had time to complete the record. This court affirmed the grant of three

of these extensions. *Rogers v. McDonald,* 226 Ga. 329 (175 SE2d 25). The trial judge had been told that the court reporter was incompetent and the judge took notes on ,the trial. It became apparent to the judge that the transcript the reporter was preparing did not truly reflect the evidence on the trial, and the judge instructed the clerk of the court to receive the transcript which the reporter brought to his office, but not to file it officially until the judge and counsel for the parties had an opportunity to check its accuracy. About October 23, 1970, the court reporter delivered documents to the clerk's office, purporting to be the transcript of the evidence, and the sealed boxes containing these documents were locked in a closet in the judge's office. There were numerous conferences between the judge and counsel for the parties in which they attempted to correct the reporter's transcript. At one of the conferences, the court reporter left the meeting, purportedly to answer a telephone call, and never returned. His present whereabouts is unknown, and he has been discharged as reporter. The new reporters are unable to read the notes of the former reporter, and other reporters have advised that they cannot read the notes.

The record demands the finding that the transcript was not officially filed on October 23, 1970. It further demands a finding that the long delay in filing the transcript was not caused by any lack of diligence on the part of the appellant McDonald. The trial judge properly refused to dismiss the appeal.

There is no merit in the motion to dismiss the appeal filed in this court in the main case.

4. The first error enumerated is that the court erred in refusing to pass upon and sustain all grounds of McDonald's demurrers as reurged to Rogers' petition, as amended, other than the grounds directed to the appointment of a receiver and the grant of injunctive relief, which were sustained by the trial court.

The case was filed in 1966, prior to the effective date of the Civil Practice Act. Several amendments were filed to

the pleading while the litigation was pending. The Civil Practice Act was in effect at the time of the trial of the case. The pleadings of Rogers at all times stated a claim for an accounting between the partners, and the trial judge did not err in not sustaining the demurrers to the petition, as amended.

5. Enumerated errors 2 and 3 assign error on the overruling of two motions of McDonald made during an interlocutory hearing on June 29, 1966. These motions were, in effect, oral motions for summary judgment. The trial judge correctly held that there were disputed issues of fact between the parties, and the case should be heard by a jury.

6. Enumerated error 4 alleges that the court erred in overruling McDonald's motion for judgment on the pleadings. This motion was made on April 11, 1969. The trial judge's order overruling the motion recited that trial of the cause before a jury had been previously set for April 14, 1969. *Code Ann.* § 81A-112 (c) (Ga. L. 1966, pp. 609, 622; Ga. L. 1967, pp. 226, 231) provides that motions for judgment on the pleadings may be made after the pleadings are closed "but within such time as not to delay the trial." The motion was therefore not timely filed.

Furthermore, the pleadings presented an issue for trial, and the motion for judgment on the pleadings, if timely filed, had no merit.

7. Enumerated error 5 alleges that the court in its order of April 14, 1969, erroneously overruled McDonald's motion to strike the petition as amended on April 11, 1969.

The right to amend pleadings under the Civil Practice Act is very broad, and there is no prohibition against the pleading of a new cause of action by amendment. *Code Ann.* § 81A-115 (Ga. L. 1966, pp. 609, 627; Ga. L. 1968, pp. 1104, 1106). "A party may also state as many separate claims . . . as he has regardless of consistency . . ." *Code Ann.* § 81A-108 (e2) (Ga. L. 1966, pp. 609, 619; Ga. L. 1967, pp. 226, 230). The petition, as amended, stated a claim on which relief could be granted, and it was not error to overrule the motion to strike it.

8. Enumerated errors 6, 7, and 8 allege error in overruling McDonald's written and oral motions to strike written "contentions" of Rogers filed on April 14, 1969. The trial judge sustained these motions as they related to the "contentions" being considered as supplemental pleadings, but denied the motions as to striking the "contentions" as such. There was no error in refusing to strike the "contentions" of Rogers.

9. At the time of the trial it was the contention of Rogers that he had been wrongfully excluded from the partnership business on February 21, 1966, by threats of violence by McDonald; that he made repeated efforts to determine the condition of the business and when he received no information from McDonald, after demand, he filed the action for accounting of the assets; that one-third of the profits of the business above the salary drawn by the partners was pledged for the payment of the indebtedness of Rogers to McDonald, and the jury should determine the net profits of the partnership from 1960 to 1969 to determine if the note of Rogers had been paid; and that the parties were still partners in the hardware business.

It was the contention of McDonald that yearly profits had not been determined; that profits, if any, by consent of the partners had been converted into inventory and capital for the business; that Rogers abandoned the business without just cause on February 21, 1966; that Rogers had paid no amount on the note due to McDonald, and failed to pay the note after demand; and that on June 29, 1966, McDonald declared the partnership business terminated under the terms of the bill of sale executed by Rogers to him, tendering to Rogers the amount calculated by McDonald as the proportionate part of the partnership assets due to Rogers, after deducting the amount of the note, with interest, and withdrawals made by Rogers above his salary of $60 per week.

The parties submitted requests for the court to require the jury to return a special written verdict on questions presented by them. In accordance with these requests, the

trial judge charged the jury that if they found in favor of the plaintiff (Rogers), they should find the net profits from the operation of the hardware store for each year from 1960 through 1968 and from January 1 to April 12, 1969; and find the indebtedness Rogers owed McDonald, in the principal sum of $26,079.04, and interest in an amount to be determined. He charged them that if they found in favor of the defendant (McDonald), they should answer the question: "Was the partnership business of Ringgold Hardware Company ended and terminated on June 29, 1966?" If the answer to this question was in the affirmative, the jury should determine whether McDonald had tendered the correct amount of balance due Rogers, and if not, what amount Rogers was entitled to from McDonald.

The jury found for the defendant McDonald that the partnership terminated June 29, 1966; but found that the amount owed to Rogers was $30,801.02, in lieu of the sum tendered by McDonald.

A number of the errors enumerated relate to rulings of the court, submission of evidence, and instructions of the court, or failure to instruct, in regard to the issue between the parties as to whether the partnership was terminated on June 29, 1966. Since this issue was determined by the jury in favor of the appellant McDonald, any alleged errors pertaining to the issue of the termination of the partnership was harmless to McDonald. It is therefore unnecessary to deal with enumerated errors 9, 10, 25, 26, 27, 28, 29, a portion of 30, 31, 37, 44, a portion of 48, 51, a portion of 59, 62, and 68, which contend that it was error to allow evidence as to matters transpiring after June 29, 1966. It is also unnecessary to deal with enumerated errors 95, 96, 97, 98, 102, 105, 123, 124, 127, and 167, objecting to instructions and rulings of the court as to contentions of Rogers which were decided against Rogers by the jury; and enumerated errors 131, 132, 151, assigning error on the failure of the court to give certain charges as to matters decided favorably to McDonald by the jury.

10. Enumerated error 11 complains that the court erred

in allowing in evidence a letter from Rogers to McDonald, over objection that no foundation had been laid for its introduction. The trial judge certified that this exhibit was disallowed.

11. Enumerated error 16 asserts that the court erred in overruling McDonald's motion for mistrial by reason of prejudicial remarks made before the jury by counsel for Rogers, and in failing to properly instruct the jury with reference to the remarks.

Counsel for Rogers stated: "We are going to use these papers to prove our case. It has been like pulling eyeteeth to make the defendant produce these papers. But we have them now and are going to prove our case with them." Counsel for McDonald objected to the statement and moved for a mistrial. The trial judge instructed the jury that the court had the right to subpoena any and all checks, books, records, and papers, that it was not the duty of any witness to bring them in voluntarily, and he instructed the jury to disregard the statement about bringing papers in.

This was a sufficient instruction, and it was not error to overrule the motion for mistrial.

12. Enumerated error 22 complains that the court erred in overruling McDonald's motion to strike books of inventory introduced by Rogers because the testimony showed that the books were not correct. Counsel for McDonald had questioned Rogers about several miscalculations in the inventory, and it was on this basis that the motion to strike was made.

It was not erroneous to refuse to strike the books of inventory from the record because some mathematical miscalculations had been made. It appears from the testimony of Mrs. Watson, who audited the records of the partnership business for Rogers, that she adjusted the incorrect multiplications in the inventory.

13. Enumerated errors 32, 33, 35, 36, 38, 39, 40, 41, 42, 43, 45, 46, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 58, 59, 61, 75, 78 pertain to testimony given by Mrs. Frances Watson, a licensed public accountant, who had been employed by

Rogers to make an audit of the partnership accounts.

It is apparent from the record in this case that no partnership accounts had been kept by the partners. In order to make any determination of the financial status of the partnership it was necessary for the accountant to examine canceled checks, check stubs, sales books, deposit slips, and similar items. Mrs. Watson testified that she had examined all of these items that she had been able to obtain from the bookkeeper employed by the partnership, and had compiled an audit from them. After counsel for McDonald had made numerous objections to testimony of Mrs. Watson on the ground that the records were the highest and best evidence, all of these records, in boxes and cans, were introduced in evidence. Objection was then made by McDonald to the introduction of this evidence.

"When pertinent and essential facts can be ascertained only by an examination of a large number of entries in books of account, an auditor or an expert accountant who has made an examination and analysis of the books and figures may testify as a witness and give summarized statements of what the books show as a result of his investigation, provided the books themselves are accessible to the court and the parties. *Bitting v. State,* 165 Ga. 55 (3) (139 SE 877)." *Bible v. Somers Const. Co.,* 197 Ga. 761 (2) (30 SE2d 623); *Crawford v. Roney,* 126 Ga. 763 (5) (55 SE 499).

It was not error to allow the testimony of Mrs. Watson, the exhibits prepared by her, and the miscellaneous documents from which she prepared her exhibits, to which objections were made in these enumerated errors.

14. Enumerated errors 72 and 77 complain that the court erred in disallowing evidence of two attorneys, witnesses for McDonald, as to the value of reasonable attorney's fees for his defense of the suit.

McDonald contends that he should have been allowed to recover his attorney's fees as a part of damages occasioned by the default of Rogers in paying the indebtedness, since the bill of sale to secure debt provided: "In case of a default by the undersigned [Rogers] as to any of the terms hereof

or of the terms of said partnership agreement executed simultaneously herewith prior to the time the debt herein secured is paid in full, or in case the share of profits of the undersigned from the operation of said partnership business are insufficient to retire the said indebtedness herein secured satisfactorily to the grantee [McDonald], the grantee herein, at his option, may demand payment in full, and upon the failure of the undersigned to make said payment, may cause an inventory to be made of the assets of said partnership based on current wholesale market value, take charge of all of said assets and of said business as his own, giving the undersigned credit for one-third of the total value of said assets on said indebtedness; or if one-third of the assets of said business shall exceed the amount of said indebtedness at such time, the balance thereof shall be first applied to payment of any damages that may have resulted from any such default on the part of the undersigned and the remainder, if any, to the undersigned. However, in case the net value of the one-third interest of the undersigned shall be insufficient to pay said indebtedness and such damages as may have resulted from such default on the part of the undersigned, then the undersigned promises to pay the balance thereof promptly . . ."

The bill of sale to secure debt makes no provision for attorney's fees as a part of damages. No demand was made by McDonald against Rogers to pay any indebtedness due until the litigation was in progress in which Rogers sought an accounting from McDonald. The evidence shows that no adequate records were kept of the partnership business, and at the time the demand was made on Rogers to pay the indebtedness, he could not have known whether profits of the business were sufficient to pay the indebtedness.

*Code* § 20-1404, providing when the expenses of litigation may be allowed as a part of damages, is not applicable to the defense of an action. *King v. Pate,* 215 Ga. 593 (3) (112 SE2d 589). If the Code section would authorize such recovery in a cross action, the present litigation is not one in which attorney's fees, as a part of damages, could be recov-

ered, since an accounting was required before the respective rights of the parties could be determined, and no bad faith is shown in the action for an accounting.

15. Enumerated error 160 contends that the court erred in failing to give in charge to the jury McDonald's request for special verdict as to whether or not Rogers had acted in bad faith in failing and refusing to abide by the contracts between the parties, and in prosecuting a false, frivolous, and unfounded action against McDonald, resulting in damages to him. There is no merit in this contention.

16. In enumerated errors 79 and 80 it is asserted that the court erred in disallowing in evidence McDonald's exhibits 30 through 37. These exhibits were excerpts from the allegations and prayers of Rogers and excerpts from the allegations and prayers of McDonald.

At the time these exhibits were offered no statement was made by counsel for McDonald as to the purpose for which they were offered. In his brief he argues that the excerpts from the pleadings of Rogers should have been allowed in evidence as admissions, and that the excerpts from McDonald's pleadings should have been allowed in evidence to show that he proposed at all times to do equity, and that he had made a demand for the payment of the indebtedness due by Rogers to him.

The jury was instructed by the trial judge in his charge on all of these pleadings offered in evidence. If any of the pleadings offered constituted admissions by Rogers which should have been allowed in evidence, the error in refusing to admit them was harmless to McDonald since the pleadings pertained to the controverted issue as to whether the indebtedness became due on the demand of McDonald, and this issue was decided by the jury in favor of McDonald.

17. Enumerated error 81 asserts that the court erred in overruling McDonald's motion for directed verdict at the conclusion of the evidence. It was not error to overrule this motion.

18. There is no merit in the contention in enumerated errors 82 and 83 that the court erred in allowing counsel

for Rogers to present to the jury large cardboard exhibits prepared by the accountant, Mrs. Watson.

19. Enumerated errors 84, 85, 87 through 127, 137 through 139, 141, 142, 149, 150, 154, 155, 156, 158, and 159 complain of excerpts from the charge of the trial judge. The judge's charge was full and fair, and we find no substantial error, harmful to McDonald, in the excerpts set out in these enumerated errors.

Enumerated errors 86, 128, 129, 130, 133, 134, 135, 136, 140, 143, 144, 145, 146, 147, 148, 152, 153, 157, 161, and 162 assert error in the failure of the court to give certain instructions to the jury, and the failure to give certain charges as requested by McDonald. The charges requested were either not correct statements of law, not adjusted to the evidence, or sufficiently covered by the general charge. There was no error in failing to give the requested charges or the other instructions which it is contended should be charged.

20. Enumerated error 163 asserts that the verdict of the jury was contrary to evidence, without evidence to support it, decidedly and strongly against the weight of the evidence, contrary to law and the principles of justice and equity, and a complete miscarriage of justice.

Since the verdict of the jury was in favor of McDonald as to the termination of the partnership on June 29, 1966, as claimed by him, this enumerated error must be directed at the amount which the jury determined Rogers was entitled to receive for his equity in the partnership.

The jury had for its consideration voluminous records of the partnership business. The appellant McDonald has not demonstrated to this court that the amount the jury found that McDonald should pay to Rogers for his share of the partnership assets was without evidence to support it.

21. Enumerated error 164 contends that the judgment "does not necessarily follow" the verdict of the jury because at the time of the trial Rogers contended that he merely desired a determination of the amount of his interest in the partnership business, and after such determination, the

parties could then propose offers to buy or sell based thereon, while the judgment as entered by the court has the effect of giving a judgment for Rogers of $30,801.02, plus the cancellation of his indebtedness of $38,091.09, as of June 29, 1966.

At the time of the trial Rogers contended that the profits of the business had paid his indebtedness prior to the time that McDonald purported to terminate the partnership by demanding payment of the note. It appeared from the evidence that the partners had made no calculations as to profits at the conclusion of each year, as contemplated by the bill of sale to secure the indebtedness, and the jury in its answer to the questions proposed to them rejected Rogers' contention that he remained a partner in the business at the time of the trial. The answers to the special questions show, without doubt, that the jury found that the partnership was terminated as of June 29, 1966, by reason of McDonald's demand for payment of the note, but that they disagreed with McDonald's calculations as to the amount he owed Rogers, above the amount that Rogers owed him on the note, and that this amount was $30,801.02. The judgment entered correctly followed the jury's verdict.

22. Enumerated error 165 contends that the court erred in denying McDonald's motion to enter judgment against Rogers for the costs in the case and for his attorney's fees. We have previously dealt with the matter of attorney's fees in Division 14 of this opinion.

"Except where express provision therefor is made in a statute, costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs, . . . " *Code Ann.* § 81A-154 (d) (Ga. L. 1966, pp. 609, 658).

The court costs were assessed against both parties, one-third against Rogers, and two-thirds against McDonald. The verdict was for McDonald as to the termination of the partnership, but in favor of Rogers as to an additional amount above that McDonald claimed that Rogers should receive in a partnership accounting. The trial judge did not abuse his discretion in dividing the costs in this manner.

23. Enumerated error 166 contends that the court erred in ruling before the trial, and during the trial before a jury, that the matter of the value of the interest of the parties in the partnership was a jury question. It is contended that McDonald had the right under the terms of the bill of sale to secure debt to determine the question of the value of Rogers' interest in the partnership.

The bill of sale to secure debt provides that in the case of a default by Rogers as to any of the terms thereof or the terms of the partnership agreement prior to the time the debt was paid in full, or in case the share of profits of Rogers from the operation of the business is insufficient to retire the indebtedness satisfactorily to McDonald, McDonald may demand payment in full, and upon the failure of Rogers to make such payment, McDonald may cause an inventory to be made of the assets of the partnership, take charge of the assets, giving McDonald credit for one-third of the total value of the assets on said indebtedness, etc.

Rogers had already filed his action seeking an accounting of the partnership assets prior to McDonald's demand for payment of the note and his determination of the value of the assets of the partnership. At all times during the litigation the parties were in dispute as to the value of the partnership assets, and the trial judge did not err in holding that the value of the partnership assets was a question for the jury.

24. Enumerated error 170 contends that the trial court erred in holding that (1) whether or not the note given by Rogers to McDonald had been paid by Rogers; (2) whether or not demand had been made upon Rogers by McDonald for payment thereof; (3) whether or not Rogers failed and refused to pay the note in compliance with the demand; and (4) whether or not McDonald had terminated and wound up the partnership business under the provisions of the bill of sale to secure debt; were not questions of law to be decided by the court, but constituted questions of fact to be decided by the jury.

As to the demand for payment of the note, the trial judge

charged the jury that no proof was needed of demand. The facts determining the other issues listed were in dispute, and the trial judge properly held that the resolution of these issues of fact was for the jury.

25. Enumerated errors 169, 171, and 174 assign error on rulings of the court that the question of whether McDonald had made offers to Rogers to buy or sell on values determined by McDonald, after the filing of the original petition, was not an issue in the case, and that evidence would not be allowed as to offers made by McDonald to allow Rogers to buy or sell, or as to any agreement between the parties.

Admissions or propositions made with a view to a compromise of an action are not proper evidence. *Code* § 38-408. The trial judge did not err in ruling that all of this evidence was inadmissible.

26. The contentions made in enumerated errors 12, 13, 14, 15, 17, 18, 19, 20, 21, 23, 24, 30, 33, 34, 60, 63, 64, 65, 66, 67, 69, 70, 71, 73, 74, 76, 168, 172, 173, 175, and 176 have been examined, and they are without merit.

*Judgment affirmed. All the Justices concur.*