## 54786. McRAE v. BRITTON.

WEBB, Judge.

Eula Mae McRae filed her complaint in two counts against Ernest C. Britton as executor of the will of W. M. McRae, alleging that in November, 1971 she entered into a contract with McRae to perform certain services for him, he being a diseased and helpless alcoholic, utterly unable to take care of himself.

In Count 1 Mrs. McRae asserted that she agreed to come to McRae's home to nurse and look after him, clean his house, supply the food, do the cooking and all things necessary in or about the house, and that he would build her a home on his estate nearby and deed it to her along with six acres of his land located just to the west of his own home as compensation for her services and in consideration of her performing such duties. Pursuant to this contract she and her husband, Rev. R. L. McRae, a brother of W. M. McRae, went to his home, took charge of him and his house, nursing him day and night, keeping the house clean, doing his washing and laundry, buying, supplying and cooking his food, working in his tack shop and doing the most menial and often repugnant tasks including bathing and cleaning up his involuntary

alcoholic, gastric and intestinal voidings, until May 1, 1975, when Dorothy M. Arant moved into his home and began sharing it with him. Shortly thereafter W. M. McRae began carrying out his part of the contract with her by building her a home on his property, repeatedly telling her that he was going to deed this home and six acres of land to her so she could be near him. This home was known and designated as 596 Lookout Loop under the system of numbering homes in Columbus. During the entire period she worked for him, W. M. McRae repeatedly promised her that he was going to deed her this property as soon as he had it surveyed for her services to him. The value of the described realty was $14,000 and the value of the services rendered by her was $14,000. W. M. McRae died testate on November 14, 1975, without having executed the promised deed to Mrs. McRae and, with the exception of a life estate in the house and one acre on which it is located devised to her husband, he devised all of his property to his "dear and trusted friend" Dorothy Arant for life with remainder over at her death to his four named grandchildren in fee simple. She prayed that the executor Ernest C. Britton be temporarily and permanently enjoined from giving his assent to this devise and that the court order him to specifically perform the contract to deed her the house and six acres in fee simple.

In Count 2 Mrs. McRae alleged that in November, 1971, McRae begged her and her husband, a retired minister, to leave their home in Columbus and move in with him so that she could work for him and care for him and his home more closely than she was able to from her home ten miles away. Yielding to his plea she and her husband did move to McRae's house, where she served him from November 20, 1971 to January 1, 1972 for 24 hours a day. After they moved into the house W. M. McRae had built for her she began to wait on and serve him no less than six hours a day and usually more, working in his home constantly from January 1, 1972 through April, 1975. During this time she bought him groceries with her own money and cooked and served him two full meals a day, in addition to waiting on him as though he were a child, bathing him, taking care of his clothes, cleaning

them for him and cleaning his house, and also uncrating and tagging articles in his tack shop. On an average of at least once a week, W. M. McRae would tell her how much he appreciated all the work and services she was rendering to him and that she would be compensated therefor, which she believed. Although no exact rate of compensation was agreed upon, a wage scale of at least $2 an hour for maid services was in effect from January 1, 1972 to May 1, 1975 for such services as she performed. However, she did far more work and rendered far more services than a maid would have because she believed all the time that he really meant to compensate her as he constantly assured her he would do. She was then over 70 years of age and had spent many of her advanced years faithfully laboring for and serving W. M. McRae.

Computed on a basis of a servant's pay of $2 an hour for six hours a day for 30 days a month the value of her services would amount to $360 a month, but she asked for only $300 a month for her work and services, as follows:
From May, 1975 back to January 1, 1975, 4 mos.  $1,200.
From Jan. 1, 1975 back to January 1, 1974, 1 yr. $3,600.
From Jan. 1, 1974 back to January 1, 1973, 1 yr. $3,600.
From Jan. 1, 1973 back to January 1, 1972, 1 yr. $3,600.
for a total of $12,000 for the three years and four months period. In addition to this she furnished and cooked two meals a day, estimated at $1 each, which would total $2,430, but since there were some days missed she only asked for $2,000 for the meals. The total of $14,000 represents a highly conservative evaluation of the worth of her services which is due and owing her and she prayed that it would be paid to her from the estate of W. M. McRae under quantum meruit because the work and services received by him were not intended to be gratuitous and there was an implied promise to pay.

At the outset of the trial before a jury the court ruled that the suit would proceed on Count 2 only because the house and six acres of land was not sufficiently described for specific performance. Mrs. McRae and eleven witnesses testified at length as to her extensive services and W. M. McRae's constant avowals that he would take care of her and see that she was well recompensed. Every allegation of the complaint was repeatedly corroborated.

One witness, who worked in a nursing home performing essentially the same services as Mrs. McRae had, testified that she was paid $20 a day for such a job. Other witnesses testified that during the period in question maids were paid $2 to $2.50 an hour. Mrs. McRae testified that the meals she served were worth more than $1 a plate and could not have been purchased for $1 a plate since she had grown the vegetables, cooked and served them herself, but that she was only charging and asking for $1 a meal.

At the close of this evidence the court directed a verdict in the executor's favor on the ground that Mrs. McRae had not proved the reasonable value of her services, which was an essential element to recovery on a quantum meruit basis. Mrs. McRae appeals and we reverse.

1. "Ordinarily, when one renders services . . . valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof; but this presumption does not usually arise in cases between very near relatives." Code § 3-107. We think that this presumption in Mrs. McRae's behalf was not precluded.

"Our courts applying this rule have repeatedly held that the circumstances in evidence presented a question for the jury to determine whether it was the intention of both parties that compensation be made, or on the contrary, that the services were performed for a deceased out of a sense of duty arising out of a family relationship. *Murrell v. Studstill,* 104 Ga. 604, 608 (30 SE 750); *Harrison v. Harrison,* 129 Ga. 284 (58 SE 831); *Phinazee v. Bunn,* supra; *Jackson v. Buice,* 132 Ga. 51, 53 (63 SE 823); *Howard v. Randolph,* 134 Ga. 691 (68 SE 586); *Wall v. Wall,* 15 Ga. App. 156, 161 (82 SE 791); *Dyer v. Beasley,* 31 Ga. App. 276 (120 SE 638); *Edwards v. Smith,* 42 Ga. App. 730 (157 SE 348); *Tatum v. Moss,* 58 Ga. App. 434 (198 SE 814); *Humphries v. Miller,* 66 Ga. App. 871 (19 SE2d 321); cf. *Hudson v. Hudson,* 90 Ga. 581 (16 SE 349). . .

"In the present case, as in the cases cited above where a recovery for services was held authorized, there was presented evidence of statements by the deceased expressing her intention to compensate the plaintiff for her services, evidence that the plaintiff's performance was with the expectation that she would be paid, evidence

as to the nature and value of the services rendered, and of the physical and financial condition of the deceased and of the plaintiff." *Cowsert v. Nunnally,* 113 Ga. App. 200, 201 (1) (147 SE2d 680) (1966); *Jones v. Van Vleck,* 119 Ga. App. 846 (1) (169 SE2d 178) (1969).

"In determining that in the contemplation of the parties such services are to be paid for, the degree of relationship between the parties, the nature of the services, including the fact that their performance is very disagreeable and obnoxious to the person performing them, that they are such as to indicate the relation of master and servant, or employer and employee between the parties, and such that the person performing them would not naturally do so without compensation and would not perform them solely for love and affection, and statements made by the person to whom the services are rendered of appreciation of the services and an intention to pay therefor, although not necessarily communicated to the person rendering the services, and the fact that the person to whom the services are rendered is financially able to pay therefor, and other facts and circumstances concerning the performance of the services, may be considered as authorizing the inference that it is in the contemplation of the parties that the services are to be paid for. [Cits.]" *Humphries v. Miller,* 66 Ga. App. 871, 872 (1) (19 SE2d 321) (1942).

The surrounding circumstances here plainly indicate that it was the intention of both parties that compensation should be made, and "it appears from the great weight of decisions in Georgia that, where the facts do not plainly demand an inference that the services were gratuitous, the particular facts of each case should be submitted to the jury under proper instructions as to the law. . . [Cits.]" *Freeman v. Phillips,* 135 Ga. App. 466, 468 (218 SE2d 144) (1975).

"It is error for the trial court to direct a verdict where there is some evidence which, together with all reasonable deductions and inferences therefrom, would support a verdict in favor of the party against whom the verdict is directed." *Curry v. Roberson,* 87 Ga. App. 785 (75 SE2d 282) (1953). "[I]n determining this question the evidence must be construed in its light most favorable to

the party against whom it was directed. [Cits.]" Ibid. p. 786.

While counsel for the executor attempted to show that W. M. McRae had been confined in a hospital for a three-month period during the time in which Mrs. McRae was serving him meals, there was also testimony that for a year he had entertained horse traders from one to two days a week, and that she had to prepare and serve meals for all of them, which would add up to more than 300 extra meals a month. Moreover, evidence that the value of these meals was more than $1 was uncontroverted. Testimony that the value of maid service was $2 to $2.50 an hour and nursing care was $20 a day was also unrebutted, and Mrs. McRae continued to clean the house even when W. M. McRae was intermittently in the hospital.

"A witness may swear to his opinion or belief as to the value of services rendered, especially where he gives the facts upon which his testimony is based." *Western & A. R. v. Townsend,* 36 Ga. App. 70 (2) (135 SE 439) (1926); and "[e]vidence of value is not to be excluded merely because the valuation fixed by the witness as a matter of opinion depends on hearsay. . ." *Powers v. Powers,* 213 Ga. 461, 462 (2) (99 SE2d 818) (1957). "Value of services rendered in essence is exclusively a matter for jury determination. [Cits.]" *Pembroke Steel Co. v. Technical Sales Associates,* 138 Ga. App. 744, 745 (3) (227 SE2d 491) (1976). We do not think there was evidence insufficient for a jury to determine the reasonable value of Mrs. McRae's services.

2. Since no question was raised in this appeal as to the propriety of disallowing Count 1 based on specific performance of the contract to deed Mrs. McRae certain property because of insufficiency of the legal description, we do not reach this issue. We note, however, that it has long been the law that "Plaintiffs and defendants, whether at law or in equity, may at any stage of the cause, as a matter of right, amend their pleadings in all respects, in matters of form or substance, if there is enough in the pleadings to amend by. [Cit.] Clearly the right to amend is exceedingly broad. *Georgia R. &c. Co. v. Tice,* 124 Ga. 459 (52 SE 916, 4 Ann. Cas. 200); *Cox v. Ga. R. &c. Co.,* 139 Ga. 532, 533 (77 SE 574). Amendment is a resource against waste. *Ellison v. Ga. R. Co.,* 87 Ga. 691, 697 (13 SE 809);

*Atlanta &c. R. Co. v. Ga. R. &c. Co.,* 125 Ga. 798 (54 SE 753). The practice as to the allowance of amendments is very liberal. *Benning v. Horkan,* 123 Ga. 454 (51 SE 333); *Kemp v. Central R. Co.,* 122 Ga. 559 (50 SE 465); *Mendel v. Mendel,* 134 Ga. 610 (68 SE 430). If an amendment is germane to the original cause of action, it should be allowed. *Patrick v. Cobb,* 122 Ga. 80 (49 SE 806); *Woodward v. Fuller,* 148 Ga. 239 (96 SE 323). Where an amendment does not set forth a different cause of action from that alleged in the petition, it is the right of the plaintiff, upon election, to amend. *Gabbett v. Atlanta,* 137 Ga. 180 (73 SE 372)." *Jenkins v. Lane,* 154 Ga. 454, 471 (115 SE 126) (1922); *Henry v. Hemstreet,* 86 Ga. App. 863, 866 (72 SE2d 801) (1952). Moreover, "The right to amend pleadings under the Civil Practice Act is very broad, and there is no prohibition against the pleading of a new cause of action by amendment. Code Ann. § 81A-115. . ." *McDonald v. Rogers,* 229 Ga. 369, 378 (7) (191 SE2d 844) (1972); *Dalton Carpet Industries v. Chilivis,* 137 Ga. App. 266 (223 SE2d 460) (1976).

*Judgment reversed. Deen, P. J., and Birdsong, J., concur.*

ARGUED NOVEMBER 2, 1977 — DECIDED NOVEMBER 28, 1977 — REHEARING DENIED DECEMBER 13, 1977.

*Louis H. Mitchell,* for appellant.
*William J. Schloth,* for appellee.