Hudson, administrator, *v.* Hudson.

1. Ordinarily, where one renders in behalf of another valuable services which are accepted by the latter, the law raises in favor of the former an implied promise to pay for the same, although no formal or express contract to pay has been made. Where, however, the parties sustain towards each other the relation of parent and child, and the services performed are in the nature of care and attention bestowed by a son upon an old and infirm father, no such presumption arises by operation of law. In order, therefore, to sustain a recovery by the son for such services, it must affirmatively appear, either that they were rendered under an express contract that the son was to be paid for them, or the surrounding circumstances must plainly indicate that it was the intention of both parties that compensation should be made, and negative the idea that the services were performed merely because of that natural sense of duty, love and affection arising out of this relation. Such foundation for a recovery would be laid when it is shown that a son, under an express contract with his father, an afflicted and infirm old man, agreed to move to the father's house, nurse and wait upon him and minister to his wants and necessities, the father agreeing on his part, in consideration of such services to be performed, to leave at his death his home place to the son; and if this contract, by reason of the fact that the old man subsequently became insane and consequently mentally incapacitated, could never be performed on the part of the father, and the son with perfect good faith fully met and complied with all the obligations resting upon him under the terms of the same, he could recover upon a *quantum meruit* the value of his services, the *quantum meruit* not being the basis of his right to recover, but the measure of the amount he was entitled to receive, the same not to exceed, however, the value of the property to be given him under the contract.

2. The full amount the plaintiff would be entitled to recover for his services in such case should be reduced by what he has actually

received from the property or estate of the father in excess of what
was necessary to support and maintain the latter during his life-
time; and where the plaintiff has had in his possession the entire
estate of the father for many years before the latter's death, he
should set forth in his declaration, and establish by such compe-
tent evidence as may be at his command, what he has received
and consumed, but the mere failure to do this will not be cause
for a new trial where there is sufficient evidence before the jury
to enable them to reach a fair conclusion as to what is the truth in
this respect.

3. On the trial of civil cases, decisions of this court, and especially
its comments upon the facts of cases, should not be read by coun-
sel to the jury.  Such a practice cannot aid the jury in ascertain-
ing the law applicable, for this they must take from the court;
nor in arriving at the truth of the case on the facts, for this they
must get from the evidence.

4. An allegation that a contract was made in 1879 may be supported
by proof that it was made in 1877, the contract not being in writ-
ing and the date not being an element material in its descrip-
tion.

5. While a contract between a father and son cannot, after the for-
mer becomes insane, be changed or modified by an agreement be-
tween his children, the father himself, so long as he is capable of
contracting in person or by agent, may change a contract pre-
viously made with the son, if the latter consents and agrees
thereto.

6. The court may properly ask questions of witnesses on the stand,
with a view to elicit the truth of the case, but should not make
remarks or comments upon them or their testimony which may
tend either to magnify or diminish in the estimation of the jury
the importance or effect of such testimony, either as to credibility
or value.

7. It is the right of the plaintiff, when the original declaration has
been lost, to establish in its stead a true copy with all entries
thereon.  No copy should be so established when it is known that
the same is not in all respects an accurate copy of the lost origi-
nal and all such entries, including verdicts rendered at former
trials of the case.  If defendant's counsel wish such verdicts con-
cealed from the jury, a request to this effect should be made at the
proper time before the jury retire to their room.

November 21, 1892.

Contract.  Parent and child.  Measure of recovery.
Evidence.  Conduct of trial.  Establishment of copy.
Before Judge RICHARD H. CLARK.  Rockdale superior
court.  March term, 1892.

A. C. McCalla, J. N. Glenn and A. M. Speer, for plaintiff in error.

George W. Gleaton and A. M. Helms, *contra.*

Lumpkin, Justice.

This case was before this court at the March term, 1891, and is reported in 87 *Ga.* 678. The substantial facts involved in the litigation as the case then appeared, are set forth in the opinion delivered. The declaration as originally filed contained an allegation that the deceased, Charles Hudson, had promised to give his son, D. J. Hudson, the plaintiff, his entire property as compensation for the son's services in removing to the father's house and taking care of and waiting upon him till his death. By an amendment made before the trial resulting in the verdict and judgment under review when the case was here before, the above allegation had been stricken from the declaration, but nevertheless evidence was introduced without objection at that trial, tending to prove that a promise had been made by the father to give the son "his property, the home place," which had been accepted and acted upon by the son. No point having been made upon the pleadings, or as to the admissibility of this evidence, this court dealt with the case as it appeared upon its substantial merits. At the last trial in the court below, the declaration was in the same condition as at the former trial, and evidence was again introduced without objection, to the effect indicated.

Ordinarily, where services in the nature of nursing, waiting upon and ministering to the wants and necessities of an infirm, diseased and aged father, are rendered by a son, the law presumes he did so from filial duty and affection, and not because of expected compensation for the same in money or property. Therefore, in order to authorize a recovery for such services, it must affirmatively appear either that there was an express

contract to pay for the services, or that under the circumstances both the father and the son contemplated and intended that payment should be made. This we understood and laid down as the law applicable when the case was before us at the term mentioned. As between parties who sustain towards each other no relation like that existing in this case, or other relations of a similar nature, the rendition of services by one and the acceptance thereof by the other raises an implied promise to pay for the services, although no express contract to do so may have been made, and a recovery upon the *quantum meruit* is lawful and proper. In a case like this, however, proof of an express contract, or of circumstances equivalent thereto, is indispensably necessary to authorize a recovery at all. Where such a contract has been proved, and the party for whom the services were rendered by reason of insanity becomes incapable of performing literally his part of the contract, a recovery on the *quantum meruit* is permissible as the fairest, best and most practicable way of arriving at and allowing the plaintiff what he is entitled to receive. But it must not be overlooked that in cases like the one now under consideration, no recovery upon the *quantum meruit* can be allowed unless the plaintiff's right is supported by an express contract that he should receive compensation for the services rendered, or what would be in law tantamount to the same thing, and in no event should the recovery exceed the value of the property he would have received under the express contract, if proved as alleged.

1. Applying what has been stated above to the record now before us, we are constrained to hold that at the last trial the court committed a serious error against the defendant. In stating the issues to the jury, the court said, in substance, that the plaintiff claimed upon a contract made with his father in the year 1877, and then

correctly informed the jury what the plaintiff contended this contract was, but failed to say it was incumbent on the plaintiff to prove the existence of such alleged contract as the necessary basis of a right to recover at all. This instruction should have been given to the jury, and the court not only failed to give it, but distinctly refused to charge a written request of defendant's counsel to this effect, and instructed the jury that the plaintiff was entitled to recover upon a *quantum meruit*, explaining what this meant by saying he was "entitled to recover as much as he reasonably deserved to have for the services, be it much, or little, or nothing." We have given the entire charge of the court a very thorough and careful examination, and we find nothing in it which would prevent the jury from finding in the plaintiff's favor whether he had or had not made an express contract with his father, by the terms of which he was to receive compensation for his services. Because of the court's failure and refusal to charge that some such contract was a necessary foundation to the plaintiff's right of action, and in view of the charge given, it is very probable that the jury understood they might find for the plaintiff the value of the services he rendered his father, with or without a contract of any kind. There being evidence tending to show that plaintiff had made no such contract with his father as he claimed, that he had gone to his father's home under an entirely different contract, and that he had received for his services all he had contracted for, and the true law of the case being as we have stated, it follows inevitably that it should be tried again, when all these matters may be properly explained and guarded by correct instructions to the jury. It is quite probable that the trial judge understood that this court had adjudicated that the plaintiff had a right to recover, and tried the case under this misapprehension. Such, however, was not the intention of this

court, nor will its opinion in 87th *Ga.*, rightly under-
stood, lead to this conclusion. We simply stated what
we conceived to be the law applicable to the case as
then presented. It was not our purpose to express any
opinion upon any question of fact involved, but to allow
the jury at the next hearing to ascertain from the evi-
dence to be then introduced what the truth of the case
was, and make their verdict under such instructions as
might be given them by the court in the light of the
law as laid down in the opinion mentioned.

2. Whenever it is ascertained what is the full amount
the plaintiff is entitled to receive for his services, if he
is entitled to recover at all, there should be deducted
from this amount all that he has received from the
property of the father over and above what was neces-
sary for the support and maintenance of the latter dur-
ing his lifetime. Inasmuch as the plaintiff had in his
possession the entire estate of the father for many years
before his death, primarily it would be the duty of the
plaintiff to set forth in his declaration, and to show by all
*competent* evidence at his command, what he did derive
and consume from the father's property. Although he
may not have done this, it would be no cause for a new
trial if the evidence actually before the jury was suffi-
cient to enable them to determine with reasonable ac-
curacy what the plaintiff did receive and enjoy of his
father's estate. If plaintiff's counsel offered him as a
witness to testify as to what he had received, or as to
any other matter, and the testimony was objected to,
and thereupon plaintiff's counsel said, "I give the gen-
tleman the opportunity to tell the truth; your honor
sees my object," there was no impropriety in making
this remark.

3. It is not proper practice to allow counsel, on the
trial of a civil case, to read to the jury decisions of this
court in the same or in other cases, and it is especially

objectionable to permit counsel to read the comments of this court upon the facts of the case as they appeared upon a former hearing thereof in this court. We are compelled, to a greater or less extent, to state and deal with the facts of cases we are called upon to decide, but our remarks in so doing are not intended to aid juries in subsequent trials, nor can they be properly used for that purpose. Whenever it is necessary for this court to allude to or comment upon the facts of a case, we do so as they appear in the record then before us, but in another investigation the evidence may be, and often is, entirely different, and the case may present quite another complexion. Supreme Court decisions cannot be read to the jury in civil cases to enlighten them upon the law. This they must take from the trial judge as their sole oracle, and it cannot be seriously contended that what is said in the opinions of this court can or should aid the jury in solving questions of fact, it being their duty in every instance to return a true verdict according to the *evidence*.

4. Defendant's counsel requested the court to charge the jury that if plaintiff alleged in his declaration a promise made in 1879 by his father, to give plaintiff his entire property for plaintiff's compensation, plaintiff could not recover upon proof of a contract made in 1877. It has already been stated that the allegation in plaintiff's declaration as to the promise or contract between him and his father had been stricken from the declaration before the trial began, but it would seem from the request just mentioned that the defendant himself treated the declaration as still containing this allegation, and his complaint seems to be that an allegation that the contract was made in 1879 cannot be supported by proof that in 1877 the father agreed to give plaintiff the home place for his services. There is no real merit in this complaint. It is not pretended that

the alleged contract was in writing, or that its date was a material element in its description. The contract relied on by the plaintiff as the basis of his right to recover was made in 1877, if made at all, and merely stating in the declaration that it was made in a subsequent year is not material, nor would the plaintiff be obliged to prove the contract precisely as alleged.

5. If the plaintiff made a contract with his father through his brother, D. N. Hudson, in 1877, by the terms of which the plaintiff was to move to his father's place and reside there and take care of and wait upon the old man, and in consideration of his services was to have the use of a one-horse farm; and if afterwards the plaintiff made a different contract with his father through the brother mentioned, by the terms of which he was to receive for his services all he could make upon the land of his father, the money coming to his father from a pension, and other things; and if the father was of sound mind and consented to and authorized the making of these contracts, the plaintiff would, of course, be bound thereby. The court was requested to charge the jury to this effect, and while he did not give the request in precisely the language presented, he did in substance so instruct the jury. We ruled at the former hearing in this court that no change in a contract between the plaintiff and his father would result from an agreement made by the children after the father became insane, and this is undoubtedly true; but if the father, either in person or through one of his sons as agent, made a contract with the plaintiff, and had at the time sufficient mental capacity to contract, the contract would be good in law, and binding upon the parties to it.

6. During the trial the court said to a witness on the stand, one John Carr, "How do you remember dates so well? You have a talent, a gift, that way"; and

when another witness, Sam. Webb, was introduced, the court said, "The witness has not got the memory that John Carr has. Do you know John Carr? He has a better recollection than you. Which is the elder man, you or he?" and again, when John Carr was recalled, the court said to him, "You have established a reputation for a good recollection, but you cannot tell the price of wheat that year; you ought to keep that reputation up." All these remarks and questions by the court were out of order. It is impossible to know what effect or tendency they may have had upon the minds of the jury. The court may often with great propriety ask questions of a witness on the stand for the purpose of bringing out the facts of the case, but should never indulge in remarks to witnesses, or in comments upon their testimony, which may either magnify or diminish its effect upon the jury as to credibility or value.

7. It appears that the original declaration in this case had been lost, and at the last trial plaintiff's counsel established a copy of the lost original. Upon this copy were written two verdicts which had formerly been rendered in the plaintiff's favor. Defendant's counsel objected to the establishment of the copy declaration with these verdicts entered upon it, and asked that the same be pasted over or erased so that they could not be read. No objection, however, was made to the correctness of the copy, nor was it denied that these verdicts were upon the original. When the jury took the papers to their room to consider their verdict, no request was made to the court to have the former verdicts concealed or erased. There can be no question that in establishing a lost declaration, or other office paper, the copy established must be a true and accurate copy, and there can be no error in allowing such a copy to be established. After this had been done, if defendant's counsel wished the former verdicts to be concealed from the jury,

a request to this effect should have been made at the proper time. As this was not done, we see no error in the conduct of the court, so far as this question is concerned.        *Judgment reversed.*