A01A0756. KENT v. A. O. WHITE, JR., CONSULTING
ENGINEER, P.C.
(559 SE2d 731)

ELDRIDGE, Judge.

The Supreme Court of Georgia vacated and remanded this case to this Court for further consideration in light of *Time Warner Entertainment Co. v. Six Flags Over Ga.*, ___ U. S. ___ (122 SC 24, 151 LE2d 1) (2001), and *Cooper Indus. v. Leatherman Tool Group*, 532 U. S. 424 (121 SC 1678, 149 LE2d 674) (2001) (*"Cooper"*).

In *Kent v. A. O. White, Jr., Consulting Engineer, P.C.*, 238 Ga. App. 792, 796 (7) (520 SE2d 481) (1999) (*"Kent I"*) (see this case for facts),[1] this Court held:

> The judgment is affirmed in part as to the breach of contract and interest awards. It is also affirmed as to the findings of liability for fraud, punitive damages, and attorney fees. The judgment is reversed in part and the case remanded as to amount of the damages for fraud, attorney fees, and punitive damages.

Kent now seeks on this appeal to reverse the retrial of the damages on three grounds: (1) that the trial court erred in reading to the jury

---

[1] See also *Kent v. A. O. White, Jr., Consulting Engineer, P.C.*, 249 Ga. App. 893 (553 SE2d 1) (2001) (*"Kent II"*).

a portion of the opinion in explaining and limiting the issues that they were to decide on the retrial; (2) that the trial court erred in entering judgment on the punitive damages award; and (3) that the trial court erred by entering judgment on the attorney fees award. The instruction to the jury limiting the issues for jury determination as described by this Court in its opinion was not error. This Court previously held that Kent was liable in some amount of punitive damages, which is conclusive of the issue of liability for punitive damages in some amount and cannot be relitigated. We returned the case for jury determination of the amount of punitive damages to be awarded in the enlightened conscience of fair and impartial jurors. Also, this Court held that Kent was liable for attorney fees; the evidence supported the amount of attorney fees awarded on retrial of this issue, as was found in the first trial. We affirmed the judgment of the trial court.

1. In this case, this Court on remand restricted the issues for jury determination to damages on retrial, because the affirmance of the judgment finding liability drastically restricted the issues for jury determination on subsequent retrial to damages only. *Kent I*, supra at 796.

Under the law of the case, neither Kent nor the jury could revisit the issues of liability for damages for fraud, punitive damages, or attorney fees; this is what the trial court properly instructed the jury using our opinion from the first appearance of this case before us. *Crowell v. City of Eastman*, 187 Ga. App. 891, 892 (1) (371 SE2d 667) (1988); see also *Intl. Indem. Co. v. Robinson*, 231 Ga. App. 236, 237 (2) (498 SE2d 795) (1998); *Lowman v. Advanced Drainage Systems*, 228 Ga. App. 182, 183-184 (491 SE2d 427) (1997); *Palm Restaurant of Ga. v. Prakas*, 192 Ga. App. 74, 76 (383 SE2d 584) (1989); *Stafford Enterprises v. American Cyanamid Co.*, 164 Ga. App. 646, 650 (299 SE2d 390) (1982). To charge the jury on the law, and even the facts, as affirmed on appeal is not reversible error where such facts have been precluded from relitigation under the law of the case.

*Hudson v. Hudson*, 90 Ga. 581, 586-587 (3) (16 SE 349) (1892), is distinguishable on the law and facts from this case; therefore, the case does not control. "Whenever it is necessary for this court to allude to or comment upon the facts of a case, we do so as they appear in the record then before us, but in another investigation the evidence may be, and often is, entirely different, and the case may present quite another complexion." Id. at 587 (3). The law of the case froze the facts as to liability as tried in the first trial, and for this reason the trial court so charged the new jury as to these fixed, previously determined facts so that they would not be retried by this jury. In *Hudson*, the issue of law disapproved by the Supreme Court was

that the trial lawyer read the law and facts from an opinion to the jury, because the jury was to receive the law exclusively from the trial court. In this case, the trial court read the law and facts to the jury from this Court's prior opinion as determined applicable for this case and, thus, limited and defined this jury's special duties and responsibility on retrial of damage issues only. The reading from this Court's opinion defined for the jury what their limited role would be and did not involve facts that they were to decide in this new trial, which was unlike the situation in *Hudson*.

Similarly, *Allen v. Hiwassee Land Co.*, 172 Ga. App. 814 (1) (324 SE2d 742) (1984), has no application to the facts of this case pertaining to liability, because unlike that case, which was tried de novo, in this case the charge went only to issues of fact and law that could not be tried again by this jury, i.e., matters that were the law of the case, because the findings of liability by the prior jury had been affirmed on appeal and had become the law of the case. Thus, the verdict of the prior jury resulting in a judgment of liability was affirmed by this Court as a matter of law.

2. Kent contends that the judgment for punitive damages was error for several reasons: it was excessive; it was a double recovery of damages in both tort and contract; and plaintiff made an election between contract damages and tort damages.

(a) OCGA § 51-12-5.1 made the standard of proof in cases for punitive damages clear and convincing evidence for determination of whether or not punitive damages in a case are appropriate prior to the determination of the amount of such damages in a bifurcated proceeding with the jury; the right to a bifurcated hearing separately on the appropriateness of punitive damages from aggravating circumstances and on the amount of damages is waived if the case goes to verdict without such procedure being followed, because such bifurcation is for the protection of the defendant. See OCGA § 51-12-5.1 (b), (d); Ga. L. 1987, p. 915, § 5; *Martin v. Williams*, 215 Ga. App. 649, 651 (2) (451 SE2d 822) (1994); *MultiMedia WMAZ v. Kubach*, 212 Ga. App. 707, 711 (3) (443 SE2d 491) (1994). Thus, the law of the case governs the issue of sufficiency of the evidence for the award of punitive damages, and this Court held that in this case the award of punitive damages was appropriate in an amount to be determined by a jury.

In such cases the award is not measured as compensation, but is fixed in an amount necessary to deter future acts. The rule which requires the amount of punitive damages to evidence a reasonable proportion to the extent of the injury applies to exemplary damages for wounded feelings. The amount, as measured by the enlightened conscience of an

impartial jury, which would be required to deter future acts necessarily depends upon the facts of the particular case.

(Citations, punctuation and emphasis omitted.) *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 341 (7) (319 SE2d 470) (1984).

In this case, the evidence showed that Kent had repeated the identical tortious conduct in the same case subsequently with another expert witness, Brown. The evidence was sufficient to support punitive damages in such amount. *Ford Motor Co. v. Stubblefield*, supra.

It is . . . true in considering excessiveness that an appellate court does not have the broad discretionary powers invested in trial courts to set aside verdicts, and where the trial court before whom the witnesses appeared had the opportunity of personally observing the witnesses has approved the verdict, this court is without power to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means. The excessiveness of the verdict was raised below on motion for new trial and overruled by the judge who had presided over the trial. . . . And the Court trying the case[ ] must receive more light on the question of excessive damages[ ] than it can impart to any other Court. Considering all of the circumstances in this case, we do not find the trial court erred in declining to find the verdict excessive.

(Citations and punctuation omitted.) Id. at 341-342 (7).

(b) Kent complains that the amount of the punitive damages bears no proportionality to the fraud damages; however, the jury returned fraud damages in the amount of $18,407.75, which the trial court wrote off, and punitive damages of $750,000, which the trial court reduced to the statutory maximum of $250,000.

Kent relies upon *Colonial Pipeline Co. v. Brown*, 258 Ga. 115 (365 SE2d 827) (1988). First, such case arose in 1982 and was decided prior to the 1987 amendment so that the law is not the same as applied here. Ga. L. 1987, p. 915, § 5. Secondly, the opinion was rendered by a divided majority of four, who concurred in the judgment only, because a three-judge opinion was joined by a special concurrence in the judgment only to create the majority, while three judges dissented; therefore, the opinion has physical precedence only. See Art. VI, Sec. VI, Par. VI of the Ga. Const. of 1983; *Grantham Transfer Co. v. Hawes*, 225 Ga. 436, 439 (2) (169 SE2d 290) (1969); *McCurry v. McCurry*, 223 Ga. 334 (155 SE2d 378) (1967); *Southern R.*

*Co. v. Parker*, 194 Ga. 94, 102 (2) (21 SE2d 94) (1942); Supreme Court Rule 58.

> Although it is true that the punitive damage award here is approximately 45.5 times higher than the actual damage award, punitive damages may be given even where recoverable, actual damages are small, and the amount of the punitive damage award is exclusively a question for the jury to determine.

(Citation and punctuation omitted.) *McClure v. Gower*, 259 Ga. 678, 684 (4) (385 SE2d 271) (1989); see also *Tyler v. Lincoln*, 272 Ga. 118, 121 (1) (527 SE2d 180) (2000).

This Court, after noting that the law of punitive damages had changed by statute from the purpose to compensate to deterrence and that it did not matter if punitive damages are disproportionate to the property damage, held:

> Compelling punitive damage awards to be mathematically proportionate, except when given to compensate for wounded feelings, would create a judicial barrier to the achievement of these clear and legitimate legislative purposes. The concept of proportionality as a legal limitation on the amount of punitive damages applies, in Georgia, only when such damages are given to compensate for wounded feelings. A deterrence award is based on factors, for the most part, unrelated to the injury to any particular victim, and is limited only by the collective conscience of the jury.

(Citation, punctuation and emphasis omitted.) *Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 301 (4) (b) (436 SE2d 14) (1993); see also *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 614 (1) (409 SE2d 501) (1991); *Hosp. Auth. of Gwinnett County v. Jones*, 259 Ga. 759, 762 (2) (386 SE2d 120) (1989); *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 885 (8) (447 SE2d 302) (1994); *Clarke v. Cotton*, 207 Ga. App. 883-884 (1) (429 SE2d 291) (1993).

(c) The trial court eliminated the possibility of a double recovery for the same damages both in contract and fraud by setting off the contract damages against the fraud damages. Generally, "the election of remedies should occur before judgment is rendered[;] there is no reversible error in failing to require the plaintiff to do so where there is no risk of double recovery." *Efstathiou v. Reiss*, 227 Ga. App. 735, 739 (10) (490 SE2d 426) (1997); see also *All Risk Ins. Agency v. Belk*, 191 Ga. App. 576-577 (1) (382 SE2d 361) (1989). This is not a case in which the plaintiff failed to prove damages for fraud; in fact, plaintiff proved damages resulting from the fraud, which were spe-

cial damages identical to the special damages for breach of contract, which the trial court wrote off to prevent a double recovery. The jury returned a verdict for special damages arising from the fraud which were identical to the damages already recovered for breach of contract. See *Hines v. Good Housekeeping Shop*, 161 Ga. App. 318, 322 (8) (291 SE2d 238) (1982).

However, Kent failed to preserve the issue of election of remedies prior to judgment between contract and tort damages and cannot do so for the first time on appeal now and has not pointed to that portion of the record demonstrating where such objection was made and ruled upon by the trial court. See *Nairon v. Land*, 242 Ga. App. 259, 261 (3) (529 SE2d 390) (2000); *Mazdak Auto Towing &c. v. Mid-Continental Group*, 231 Ga. App. 859, 860 (1) (501 SE2d 44) (1998); *Long v. Marion*, 182 Ga. App. 361, 362-363 (1) (355 SE2d 711) (1987).

3. Kent seeks to attack the award of attorney fees on the same basis that he attacks punitive damages, i.e., the fact that the trial court, on retrial, set off the fraud damages against the earlier award of contract damages so that there were tort damages awarded to support expenses of litigation. Under OCGA § 13-6-11, the same bad faith to establish fraud also establishes bad faith in a breach of contract action. See *Ryland Group v. Daley*, 245 Ga. App. 496, 499-500 (3) (537 SE2d 732) (2000). However, this Court sent back for reconsideration the award of attorney fees, because "the attorney fees award may have also been related to the fraud award," which would require the retrial of such damages as well and not whether or not Kent was liable for such damages. *Kent I*, supra at 794 (1) (c). As a matter of law and fact, this Court determined that under either contract or tort theories, Kent was liable for attorney fees in some amount. Under the law of the case, it did not matter whether the attorney fees were recovered under a tort theory or a contract theory, because this Court had held such damages were recoverable and left open only the determination of how much. Id. Even under this state of the law and facts, the jury returned a verdict for fraud damages, which was sufficient to support the award of attorney fees. See *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 712 (2) (507 SE2d 493) (1998); *Hines v. Good Housekeeping Shop*, supra at 321-322. Here, plaintiff received a verdict for special damages for fraud, but the trial court set such damages off against the earlier award of contract damages for the same special damages.

This issue is controlled by Divisions 1 and 2, because Kent did not preserve the issue of election of remedies prior to entry of judgment, and we are governed by the law of the case as determined in *Kent I*, supra at 794.

4. The standard of review on appeal of an excessive punitive damages award is now de novo. *Kent v. A. O. White, Jr., Consulting*

*Engineer, P.C.*, Case No. S01C1449, 2001 Ga. LEXIS 929 (2001). The Supreme Court of Georgia vacated and remanded this case with these Delphic instructions:

> [u]pon consideration of the motion for reconsideration, the same is hereby granted. The judgment of the Court of Appeals is vacated, and the case is remanded to that court for further consideration in light of *Time Warner Entertainment Co. v. Six Flags Over Ga.*, [supra,] and *Cooper Industries v. Leatherman Tool Group*, [supra].

While the motion for new trial raised the issue of the excessiveness of the punitive damages as a violation of due process under the federal and Georgia constitutions and was denied by the trial court, such issue was not raised in this Court in the enumeration of errors or in the motion for reconsideration. Therefore, such constitutional issue was abandoned. *Cooper* held that "[w]e now conclude that the constitutional issue merits de novo review. Because the Court of Appeals applied an 'abuse of discretion' standard, we remand the case for determination . . . under the proper standard." Id. at 431 (I). It left abuse of discretion to be the standard for review of all nonconstitutional issues. Id.

Kent stated before this Court in the standard for review that the standard for this case was abuse of discretion. However, notwithstanding the abandonment of such constitutional issue on appeal in this case, in granting certiorari, vacating, and remanding this case for consideration of the recent United States Supreme Court cases of *Time Warner Entertainment Co. v. Six Flags Over Ga.*, supra, and *Cooper*, supra, which both dealt only with the standard of appellate review of the constitutional due process issue of excess punitive damages, apparently sub silentio the Supreme Court of Georgia has adopted the standard of de novo review in all excess punitive damages cases. Therefore, in compliance with the express mandate of the Supreme Court of Georgia, we make a de novo review applying the due process constitutional criteria as set forth in *BMW of North America v. Gore*, 517 U. S. 559 (116 SC 1589, 134 LE2d 809) (1996) ("*Gore*"), as required by *Cooper*, supra.

> In *Gore*, we instructed courts evaluating a punitive damages award's consistency with due process to consider three criteria: (1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages

awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Cooper*, supra at 440 (III).

(a) "[T]he degree of the defendant's reprehensibility or culpability" is the first criterion that we must examine. *Cooper*, supra at 435 (II). The General Assembly by OCGA § 51-12-5.1 (b) has set forth certain tortious aggravating, nonexhaustive, circumstances which will authorize punitive damages to penalize, punish, or deter a defendant for conduct that was or demonstrates: (1) wilful misconduct; (2) malice; (3) fraud; (4) wantonness; (5) oppression; or (6) that entire want of care which would raise the presumption of conscious indifference to the consequences. All but the last involve intentional tortious misconduct. The nature of fraud is such that it includes within its elements the intent to commit harm to the victim. OCGA § 51-12-5.1 (f); *McDaniel v. Elliott*, 269 Ga. 262, 264 (1) (497 SE2d 786) (1998); *Speir v. Krieger*, 235 Ga. App. 392, 402 (5) (509 SE2d 684) (1998). However, the jury's verdict did not find in either *Kent I* or *Kent II* that Kent had the intent to cause harm; therefore, the maximum punitive damages recoverable by statute is $250,000. OCGA § 51-12-5.1 (f); *McDaniel v. Elliott*, supra at 265 (3).

In this case, two juries heard that Kent hired White and let him work for two and one-half years, ignoring the monthly billing and refusing to pay for the services rendered. Kent to this day denies such tortious conduct and contends that he and White had an understanding that amounted to a contingent contract that White would be paid only if Kent won the case in which White testified. Thus, the jury found that such misconduct was deceit in concealing from White that he would not be paid and allowing him to continue to render services and that White had been terminated following the first trial. OCGA §§ 23-2-23; 51-6-2; *American Petroleum Products v. Mom & Pop Stores*, 231 Ga. App. 1, 5 (1) (497 SE2d 616) (1998). Further, Kent acted in similar fashion subsequently with another expert witness, arising from the same case. See *Kent v. Brown*, 238 Ga. App. 607 (518 SE2d 737) (1999); however, such expert did not seek punitive damages, because he sued in contract only. Id.

In determining degrees of culpability, fraudulent misrepresentation to cause harm demonstrates a higher degree of culpability than fraud by deceit, because the former involves active conduct to mislead through a false statement while the latter involves concealment of material facts to mislead passively. Further, fraud or deceit to damage through obtaining money or property, i.e., out-of-pocket damages, constitutes a greater degree of culpability than loss of services, because the business of rendering of services always carries the risk of nonpayment. However, nonpayment of services means

that the plaintiff was not only deprived of the pay and expenses but also the opportunity to work for another, which are represented by one damage for the services rendered, i.e., $18,407.75.

Kent's reprehensibility of conduct for deceit was less than fraud by misrepresentation but was ethically as great, because he was an attorney at law acting under the Code of Professional Conduct. His conduct in degree and in reprehensibility was less than the conduct in either *Gore* or *Cooper*, which were intentional acts of passing off merchandise by use of the competitor's product in advertising or sale of damaged goods as new to increase profits, and also, was less than the conduct in *McDaniel v. Elliott*, which was fraud for economic gain. Id. at 263. By Kent's own testimony, he intended to pay White had he won the case but instead lost; therefore, he did not pay. Kent's conduct was within OCGA § 51-12-5.1 (b) but just barely. The jury found Kent's conduct to constitute deceit, but if Kent's testimony was true, then he had a contingent fee contract with an expert witness to testify, which is unethical but not deceit. In *Kent I*, the jury thought that the conduct required some punishment in proportion less than the other damages as a deterrent by awarding punitive damages of only $10,000, which was 0.54 to 1, and the other expert did not even pursue a fraud claim or punitive damages against Kent. This indicates the perception that others had of the lack of seriousness of Kent's misconduct.

(b) The second criterion that we must weigh is "the relationship between the penalty and the harm to the victim caused by the defendant's actions." *Cooper*, supra at 435 (II). Disparity between actual damages for the services not paid of $18,407.75 and punitive damages of $750,000 reduced to $250,000 were 13.58 to 1. In the first trial, punitive damages were only $10,000, a ratio of 0.54 to 1, which now must seem a Pyrrhic victory in having to retry the amount of punitive damages, fraud damages, and expenses of litigation only, which tended to focus the jury more on punitive damages. Punitive damages are intended by the General Assembly to penalize, punish, and deter future conduct, that is "to deter the repetition of reprehensible conduct by the defendant. . . . OCGA § 51-12-5.1 (a)." *Hosp. Auth. of Gwinnett County v. Jones*, supra, 261 Ga. at 614 (1). Punitive damages cannot be awarded as a matter of public policy against a governmental entity, because it "'punishes' only the taxpayers." *MARTA v. Boswell*, 261 Ga. 427, 428 (405 SE2d 869) (1991). But the General Assembly did not intend that the effect of the Act was to pauperize, bankrupt, or destroy the individual tortfeasor; to this end, the General Assembly has placed various limitations on awards of punitive damages and the recipient in recognition of the many degrees of culpability. OCGA § 51-12-5.1 (a), (d) (1); *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 230 (4) (476 SE2d 565) (1996); *State*

*of Ga. v. Moseley*, 263 Ga. 680, 681 (2) (436 SE2d 632) (1993); *Mack Trucks v. Conkle*, 263 Ga. 539, 541-542 (2) (436 SE2d 635) (1993); *Bagley v. Shortt*, 261 Ga. 762, 763 (4) (410 SE2d 738) (1991). We must consider "regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case": that Kent is in the final years of his long law practice, since 1958, so that there are limited years over which deterrence would apply; that such conduct would not come within any applicable errors or omissions policy because it was intentional misconduct; and that the total other damages of $18,407.75, $26,968.99 attorney fees for the first trial and $27,396.81 for the second trial must be satisfied from his personal assets along with the punitive damages. OCGA § 51-12-5.1 (d) (1). Thus, for compensatory damages of $18,407.75 for nonpayment of a commercial account, Kent must also pay $54,365.80 for White's expenses of litigation, and $250,000 punitive damages. Such is a heavy penalty for an individual under these facts and circumstances.

(c) The third criterion that we must consider is "the sanctions imposed in other cases for comparable misconduct." *Cooper*, supra at 435 (II). Thus, we are called upon to make some survey of the comparable civil penalties that have been assessed in similar cases. Theft of services or theft by deception of $18,407.75 would constitute felonies under OCGA §§ 16-8-3, 16-8-5, and 16-8-12; the maximum amount of the fine for such felony would be $100,000. OCGA § 17-10-8. However, there is no civil penalty imposed for such conduct other than a civil action seeking punitive damages. Under a civil Georgia Racketeer Influenced & Corrupt Organizations Act action for fraud, the special damages and punitive damages as a penalty would be tripled. OCGA § 16-14-6 (c); *Dee v. Sweet*, 268 Ga. 346, 348-349 (1) (489 SE2d 823) (1997); *Speir v. Krieger*, supra at 402 (5).

In *Gore,* the actual damages were $4,000 and the punitive damages were $4,000,000, reduced to $2,000,000, a ratio of 500 to 1, which was found to be a violation of due process. Id. at 564-567. In *Cooper,* the actual damages were $50,000 and punitive damages were $4,500,000, a ratio of 90 to 1, which required a de novo appellate determination if it violated due process. Id. at 424. In *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U. S. 1 (111 SC 1032, 113 LE2d 1) (1991), the compensatory damages were $200,000 and punitive damages were $840,000, a ratio of 4.2 to 1, which did not violate due process. In *Browning-Ferris Indus. &c. v. Kelco Disposal*, 492 U. S. 257 (109 SC 2909, 106 LE2d 219) (1989), the compensatory damages were $51,146 and the punitive damages were $6,000,000, a ratio of 117 to 1, which did not violate due process.

In examining punitive damages as a sanction for comparable civil fraud and deceit cases since the passage of OCGA § 51-12-5.1,

which is required in this third step analysis, it becomes apparent that corporate entities receive greater sanctions than individual defendants receive. When it is considered that the purpose of punitive damages is to penalize, punish, and deter future similar conduct, the difference is readily understood, because corporations cannot feel guilty or experience public shame and humiliation, although good will can be harmed, and act through employees; however, such loss of good will is not the same as individual humiliation as a deterrent. A jury may believe that an individual may be deterred and punished by less drastic sanctions.[2] Since corporations are legal entities that generally can be punished or deterred only financially, then in fraud cases juries tend to return higher punitive damages than against an individual, because corporate entities have indefinite existence in the future.[3]

When the ratio of 13.58 to 1 of Kent's actual damages to punitive damages is compared to the punitive damages average ratios for other individuals, such ratio is much lower at 4.67 to 1. But when Kent's ratio is compared to the corporate average of 12.6, Kent's ratio even exceeds the corporate average. Thus, the punitive damages returned against Kent under a *Gore* analysis are grossly excessive punishment on an individual tortfeasor for attempting passively to obtain services without paying for them. It is also grossly disproportionate to the first award of punitive damages returned against him.

---

[2] *McDaniel v. Elliott*, supra (individual – compensatory damages returned but not stated, punitive damages $650,000); *Conner v. Conner*, 269 Ga. 112 (499 SE2d 54) (1998) (individual – compensatory damages $131,200, punitive damages $50,000, 0.38 to 1); *In the Matter of Krell*, 267 Ga. 142 (475 SE2d 617) (1996) (attorney who defrauded client – compensatory damages $196,571.59, punitive damages $100,000, 0.51 to 1); *Lisle v. Willis*, 265 Ga. 861 (463 SE2d 108) (1995) (individual – compensatory damages awarded but not stated, punitive damages $175,000 reduced to $90,000); *Speir v. Krieger*, supra (individual – compensatory damages $7,248, punitive damages $250,000, 34.5 to 1); *Efstathiou v. Reiss*, supra (individual – compensatory damages $71,000, punitive damages $95,000, 1.34 to 1); *Howard v. Hammond*, 216 Ga. App. 703 (455 SE2d 390) (1995) (individual – compensatory damages $45,000, punitive damages $5,000, 0.11 to 1); *Shaw v. Ruiz*, 207 Ga. App. 299 (428 SE2d 98) (1993) (individual – compensatory damages $70,911.65, punitive damages $12,500, 0.18 to 1); *Smith v. Manns*, 200 Ga. App. 701 (409 SE2d 270) (1991) (individual – compensatory damages $29,132, punitive damages $20,000, 0.69 to 1); *Maddox v. Brown*, 200 Ga. App. 492 (408 SE2d 719) (1991) (individual – compensatory damages $21,843.69, punitive damages $30,000, 1.03 to 1); *Long v. Marion*, 182 Ga. App. 361 (355 SE2d 711) (1987) (individual – compensatory damages $6,000, punitive damages $20,000, 3.3 to 1).

[3] *Rockdale Body Shop v. Thompson*, 222 Ga. App. 821 (476 SE2d 22) (1996) (corporation – compensatory damages $6,500, punitive damages $2,500, 0.38 to 1); *Ga. Farm &c. Ins. Co. v. Miller*, 222 Ga. App. 95 (473 SE2d 189) (1996) (corporation – compensatory damages $8,000, punitive damages $9,000, 1.13 to 1); *Southern Cellular Telecom v. Banks*, 208 Ga. App. 286 (431 SE2d 115) (1993) (corporation – compensatory damages $100,000, punitive damages $150,000, 1.5 to 1); *Miles Rich Chrysler-Plymouth v. Mass*, 201 Ga. App. 693 (411 SE2d 901) (1991) (corporation – compensatory damages $1,000, punitive damages $50,000, 50 to 1); *BWP, Inc. v. Woodson*, 196 Ga. App. 768 (397 SE2d 43) (1990) (corporation – compensatory damages $1,000, punitive damages $10,000, 10 to 1).

While reprehensible and culpable, Kent's conduct under the *Gore* analysis fails to justify the imposition of sanctions greater than the norm to penalize, punish, and deter this individual. There exist no aggravating circumstances that require that he should be treated more harshly than other individuals similarly situated.

Therefore, as a matter of judicial economy, it is incumbent on this Court to determine under *Gore* and *Cooper* what is fair and just under the particular facts and circumstances of this case when considered against the conduct in similar cases. This approach would be inappropriate where the facts and circumstances were of such aggravated nature that a departure from the norm was not only justified but demanded to adequately penalize, punish, and deter future conduct. *Hosp. Auth. of Gwinnett County v. Jones*, supra, 259 Ga. at 762 (2); *McClure v. Gower*, supra; *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 164-165 (1) (473 SE2d 256) (1996); *Oglethorpe Power Corp. v. Sheriff*, supra.

> Appellate review makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition. Unlike the measure of actual damages suffered, which presents a question of historical or predictive fact, the level of punitive damages is not really a "fact" "tried" by the jury. Because the jury's award of punitive damages does not constitute a finding of "fact," appellate review of the [trial court's] determination that an award is consistent with due process does not implicate the Seventh Amendment concerns.

(Citations and punctuation omitted.) *Cooper*, supra at 436 (II), n. 9, 437 (III). See also *Lisle v. Willis*, 265 Ga. 861, 863 (2) (463 SE2d 108) (1995).

Thus, as a de novo appellate review of these nonfacts, we find that if the average individual ratio in comparable fraud cases is not excessive and satisfies substantive due process as set forth in *Gore* and *Cooper*, then 4.67 (the average ratio for comparable cases) x $18,407.75 (compensatory damages found) = $85,964.19 (constitutional punitive damages) would be a constitutional punitive damages award under the peculiar facts and circumstances of this case where the conduct was not highly reprehensible so that unique punishment and deterrence were not demanded. Therefore, we vacate and remand the judgment to the trial court for entry of judgment not inconsistent with this opinion for punitive damages of $85,964.19.

*Judgment vacated and remanded. Andrews, P. J., and Miller, J., concur.*

DECIDED JANUARY 29, 2002.

*Christopher J. McFadden*, for appellant.
*Hatcher, Stubbs, Land, Hollis & Rothschild, William B. Hardegree, Gregory S. Ellington*, for appellee.